IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DONALD WAYNE DALTON, *Appellant*.

No. 1 CA-CR 15-0074
FILED 1-26-2016

Appeal from the Superior Court in Maricopa County
No.  CR 2014-000938-001
The Honorable Michael W. Kemp, Judge

**REVERSED AND REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz, Linley Wilson
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Paul J. Prato
*Counsel for Appellant*

Donald Wayne Dalton, Safford
*Appellant*

---

## OPINION

Presiding Judge Patricia K. Norris delivered the opinion of the Court, in which Judge Patricia A. Orozco joined. Judge Kent E. Cattani dissented.

---

**N O R R I S,** Judge:

¶1　　　　Donald Wayne Dalton appeals from his conviction and sentence for one count of burglary in the second degree, a class 3 felony. After searching the record on appeal and finding no arguable question of law that was not frivolous, Dalton's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), and asked this court to search the record for fundamental error. This court also granted counsel's motion to allow Dalton to file a supplemental brief *in propria persona*. After reviewing both briefs and the record, we determined the record failed to demonstrate whether the superior court had complied with its obligation under Arizona Rule of Criminal Procedure 18.5(h) to instruct the jury it needed to begin its deliberations anew when it replaced a deliberating juror with the alternate.[1] Accordingly, we requested counsel for the parties to brief whether the court committed fundamental, prejudicial error by apparently failing to comply with Rule 18.5(h). Having reviewed that briefing and given the State's acknowledgment that the superior court did not instruct the jury to begin its deliberations anew when the alternate joined it, we agree with Dalton the court's non-compliance with Rule 18.5(h) constituted fundamental, prejudicial error. Accordingly, we vacate Dalton's conviction and sentence for burglary in the second degree and remand for a new trial.

### FACTS AND PROCEDURAL BACKGROUND[2]

¶2　　　　On May 2, 2013, police responded to a 911 caller who reported a man was removing a swamp cooler from the roof of a vacant house. The caller told dispatch he saw the man who had been on the roof along with a

---

[1]Rule 18.5(h) states, in relevant part, "If an alternate joins the deliberations, the jury shall be instructed to begin deliberations anew."

[2]We view the facts in the light most favorable to sustaining the jury's verdict and resolve all reasonable inferences against Dalton. *See State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).

second man, who turned out to be Dalton, walking away from the house and down the alley. Dalton and the man who had been on the roof, Brian Day, matched the descriptions given by the caller. An officer arrived at the scene and saw that the swamp cooler had been removed from the roof. The officer detained the two men and questioned them.

¶3　　　　In the questioning recorded by the police at the scene, Dalton first denied being inside the house. After further questioning, however, he admitted he had been inside. He denied any wrongdoing and told the officer that Day was acting "stupid," and he was trying to "get Brian to leave the premises and [to] stop doing what he was doing because [he] didn't want to see him being an idiot and getting in trouble." Day did not tell the police Dalton was helping him with the swamp cooler.

¶4　　　　On January 21, 2014, a grand jury indicted Dalton for burglary in the second degree and criminal damage. At trial, Dalton testified he had been "living homelessly," and had occasionally slept in the house. He explained that on the day police arrested him, he had been inside the house sleeping when he heard a banging noise. He went outside through a back window and saw the swamp cooler hanging "over [his] head." He saw Day, who appeared "not very coherent," mumbling and talking to himself. Dalton testified he tried to get Day to leave the house with him so Day would not hurt himself, and he had first lied to police about being in the house because he did not want to get "wrapped up with Brian Day's stupidity."

¶5　　　　After final instructions and closing argument, the court designated the alternate juror by lot and advised the jury the alternate could be called back if "something happens overnight." The court then excused the alternate. The jurors retired to consider their verdicts at 2:15 p.m., and the court recessed. At 3:22 p.m., the court reconvened—with counsel present telephonically and Dalton's presence waived—to consider a question from the jury. The court provided a written response to the question and recessed again at 3:23 p.m. At 4:21 p.m., the court reconvened with counsel present telephonically, and it advised counsel the jury had decided to "quit for the day," but that one of the jurors had informed the bailiff she could not return the next day. The court told counsel its solution was to "bring the alternate back and have them start over at 11:00 tomorrow." The court and counsel then agreed the court would telephone the alternate and inform her that she had to return the next day at 11:00 a.m. to begin deliberations with the other jurors.

¶6　　　　At 11:00 a.m. the next day, the jury reconvened. Although the day before the court had told counsel it would have the jury "start over"

when the alternate joined it, the record contains no indication—and the parties do not argue otherwise—that the court actually instructed the jury to "start over." Neither Dalton nor the State brought the court's failure to comply with Rule 18.5(h) to its attention. The jury returned to the courtroom to announce its verdict 43 minutes later, at 11:43 a.m. The trial transcript, however, reflects the jury actually deliberated less than 43 minutes as the court apologized for making the jury wait before it could return its verdicts. The jury found Dalton guilty of burglary in the second degree, but not guilty of criminal damage. The court polled the jury, and the individual members of the jury confirmed the verdicts.

## DISCUSSION

I.     Non-Compliance with Rule 18.5(h)

¶7         In his supplemental brief filed at our request, Dalton argues the court failed to comply with its obligation under Rule 18.5(h) and, therefore, committed fundamental, prejudicial error entitling him to a new trial. *See State v. Henderson*, 210 Ariz. 561, 567-68, ¶¶ 19-21, 115 P.3d 601, 607-08 (2005). We agree.

¶8         In *State v. Guytan*, 192 Ariz. 514, 968 P.2d 587 (App. 1998), this court explained the inherent problems when a new juror joins deliberations that have already begun:

> Where an alternate juror is inserted into a deliberative process in which some jurors may have formed opinions regarding the defendant's guilt or innocence, there is a real danger that the new juror will not have a realistic opportunity to express his views and to persuade others. Moreover, the new juror will not have been part of the dynamics of the prior deliberations, including the interplay of influences among and between jurors, that advanced the other jurors along their paths to a decision. Nor will the new juror have had the benefit of the unavailable juror's views. Finally, a lone juror who cannot in good conscience vote for conviction might be under great pressure to feign illness in order to place the burden of decision on an alternate.

4

*Id.* at 518, ¶ 11, 968 P.2d at 591 (quoting *People v. Burnette*, 775 P.2d 583, 588 (Colo. 1989)).  The requirement that the jury begin deliberations anew guards against these problems.

> If deliberations have begun, some issues already may have been decided as a practical matter.  In that case, there is an inherent risk that the resulting verdict as to those issues will reflect only the views of the original jurors, *thereby depriving the defendant of his right to unanimity from the requisite number of jurors.*

*Id.* at 521, ¶ 22, 968 P.2d at 594 (emphasis added).  Article 2, Section 23, of the Arizona Constitution guarantees a defendant the right to a unanimous jury verdict in a criminal case.  The right to a unanimous jury verdict is not met, however, unless the jurors

> reach their consensus through deliberations which are the common experience of all of them. It is not enough that [the jurors] reach a unanimous verdict if 1 juror has not had the benefit of the deliberations of the other [jurors]. Deliberations provide the jury with the opportunity to review the evidence in light of the perception and memory of each member. Equally important in shaping a member's viewpoint are the personal reactions and interactions as any individual juror attempts to persuade others to accept his or her viewpoint. . . . *[A] defendant may not be convicted except by [jurors] who have heard all the evidence and argument and who together have deliberated to unanimity.*

*People v. Collins*, 552 P.2d 742, 746 (Cal. 1976) (emphasis added).  For these reasons, the error here was fundamental.  *See Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607.[3]  Thus, the issue becomes whether the error was also prejudicial.

---

[3]In *State v. Tucker*, a capital case, the Arizona Supreme Court held the superior court was not required to instruct under Rule 18.5(i) when an alternate juror joined the jury after it had completed the aggravation

**¶9**   Not every failure by a trial court to instruct the jury that it must begin deliberations anew when it replaces a juror will constitute reversible error. *Guytan*, 192 Ariz. at 521, ¶ 23, 968 P.2d at 594. Whether such a failure is reversible depends on whether it is prejudicial—an inquiry that overlaps with fundamental error review under *Henderson*. Prejudice under fundamental error review "is a fact-intensive inquiry, the outcome of which will 'depend [] upon the type of error that occurred and the facts of a particular case.'" *State v. Dickinson*, 233 Ariz. 527, 531, ¶ 13, 314 P.3d 1282, 1286 (App. 2013). To show prejudice, Dalton bears the burden of showing that a reasonable jury "could have reached a different result" had it been properly instructed under Rule 18.5(h). *See Henderson*, 210 Ariz. at 569, ¶ 27, 115 P.3d at 609. *Guytan*—and other courts that have considered whether a defendant was prejudiced when a trial court failed to instruct a jury that it must begin deliberations anew when it replaces a juror[4]— recognized a court should take into account the following factors to determine prejudice: first, whether other instructions given by the court to the jury ameliorated the failure to instruct the jury to begin deliberations anew; second, the length of time the jury deliberated before and after the substitution; and third, the strength of the evidence against the defendant.

---

phase of the case, but before it had begun the penalty phase. 215 Ariz. 298, 319, ¶ 83, 160 P.3d 177, 198 (2007). Citing *Tucker*, the dissent asserts it stands for the proposition that a "substitute juror can properly reach a verdict without having participated in every discussion relevant to the ultimate issue as long as the substitute juror fully deliberates and reaches an independent verdict." *See infra* ¶ 39. First, the supreme court did not say this. Second, as noted, *Tucker* is a capital case, and thus the aggravation phase is separate from the penalty phase, *see* A.R.S. § 13-752 (2015), and the alternate joined the penalty phase deliberations before they had begun. Accordingly, the supreme court held the superior court "was not required to instruct the jury to begin deliberations anew because such an instruction is required only where a substitution is made after deliberations have begun." *Tucker*, 215 Ariz. at 319, ¶ 83, 160 P.3d at 198.

   [4]*See People v. Collins*, 552 P.2d 742 (Cal. 1976); *State v. Gomez*, 56 P.3d 1281 (Idaho 2002); David B. Sweet, Annotation, *Propriety, under state statute or court rule, of substituting state trial juror with the alternate after case has been submitted to jury*, 88 A.L.R. 4th 711 (2015); *cf. State v. Martinez*, 198 Ariz. 5, 6 P.3d 310 (App. 2000).

Applying these factors here, the error was prejudicial. *See Guytan*, 192 Ariz. at 518-19, ¶¶ 12-13, 968 P.2d at 591-92.

¶10   First, none of the court's other instructions to the jury ameliorated the failure to instruct the jury it was required to begin its deliberations anew when the alternate joined it. Although we recognize—as the State argues in its supplemental brief—that in its preliminary instructions, the court instructed the jurors they should form their final opinions only after they have had "an opportunity to discuss the case with each other in the jury room at the end of the trial," and in its final instructions told the jury, "[d]o not deliberate unless all of you are present," and, "[d]o not take a vote until you've discussed all the evidence in the case," neither those instructions nor the other instructions noted by the dissent can be understood as instructing the jurors that when the alternate joined them, they were to start over again from the proverbial square one.[5]

¶11   In *Guytan*, other instructions given to the jury by the court after the alternate joined the jury ameliorated the risk of confusion. Those instructions—unlike the instructions here—specifically required all of the jurors, including the alternate, to "actively participate" and to return a verdict "that would represent individual thinking expressed collectively." *Id.* at 518, ¶ 6, 968 P.2d at 591. Thus, although the court in *Guytan* failed to comply with Rule 18.5(h), its instructions—given to the jurors *after* the jury had been reconstituted—focused the jurors' attention on what they were individually and collectively required to do *after* the alternate joined them. That did not happen here. The court's general instructions to the jurors—instructions that generally explained what they needed to do as jurors and given before the court replaced the deliberating juror with the alternate—were not comparable to or even a reliable substitute for an instruction that explicitly informed the reconstituted jury that it had to start over again.

¶12   Second, the jury deliberated for approximately two hours before the alternate joined it, but for less than 43 minutes afterwards. *See*

---

[5]The dissent argues that because, when polled, each of the jurors, including the alternate, confirmed the guilty verdict was his or her true verdict, the jurors must have discussed all of the evidence in the case before they voted. *See infra* ¶¶ 33, 41. Not only is this suggestion speculative, but as explained in *Guytan*, a juror who joins the deliberations mid-stream may not have a realistic opportunity to express his or her views and to persuade others. And, to put the point plainly, a juror who joins in mid-stream may well be pressured by the other jurors to "go along" with what they have already discussed or even decided.

*supra* ¶ 6. Thus, unlike the situation in *Guytan*, the bulk of the jury's deliberations here occurred before the alternate joined the panel. Given this, the record provides no reasonable assurances that the reconstituted jury began deliberations anew, with each juror fully participating.[6]

**¶13**      Third, the State's case against Dalton was not overwhelming, and a jury could have reached a different result had it been instructed pursuant to Rule 18.5(h). Dalton consistently denied he had been on the roof, and indeed, the 911 caller never reported to dispatch or the police he had seen Dalton on the roof, or even acting as a lookout. And, although Dalton initially misled police about being inside the house, *see supra* ¶ 3, he consistently denied he had assisted Day in attempting to remove the swamp cooler. This is an important point. Contrary to the State's argument in its supplemental brief, Dalton never "essentially admitted he was Day's accomplice . . . when he told [the police] that it was 'stupid to help' Day because 'he could have gotten [him]self in so much trouble.'" Instead, as the police recording at the scene makes clear, Dalton actually told the police he had only been trying to "get Brian to leave the premises and [to] stop doing what he was doing because [he] didn't want to see him being an idiot and getting in trouble" and he "was scared because [he] just realized how stupid it is to help somebody and [he] could have gotten [him]self into so much trouble over it."

**¶14**      Under the circumstances presented here, we cannot say beyond a reasonable doubt that the jury would have reached the same result had the superior court properly instructed it to begin deliberations anew when the alternate joined it. *Cf. State v. Ruiz*, 236 Ariz. 317, 323, ¶ 18, 340 P.3d 396, 402 (App. 2014) (applying fundamental error review; error in instructing jury was prejudicial when appellate court could not "say beyond a reasonable doubt that the jury would have convicted" defendant without erroneous jury instruction). The error was, thus, prejudicial.

---

[6]The dissent argues "there is no evidence—or even suggestion—that the jurors decided 'some issues' relating to Dalton's conviction before the substitute juror joined in deliberations." *See infra* ¶ 35. The dissent essentially rests this argument on the assertion that this was an easy case and the jurors were presented with only one question— whether they believed Dalton's testimony he did not intend to assist Day in removing the swamp cooler. *See infra* ¶¶ 35-37. To answer this question, the jury had to decide whether Dalton acted as an accomplice—an inquiry that is not as simple as the dissent portrays—or whether he was merely present at the crime scene—an inquiry that requires the finder of fact to consider multiple issues.

Accordingly, we vacate Dalton's conviction for burglary in the second degree and remand for a new trial.

## II.     Other Matters

**¶15**          In his *in propria persona* supplemental brief, Dalton also argues we should vacate his conviction and sentence for two other reasons.

**¶16**          First, Dalton argues the prosecutor "used threats and coercion to try to make" him accept a plea in this case.  Dalton has not explained when and under what circumstances the prosecutor allegedly used threats and coercion, and in any event, the record does not support this argument. Moreover, even if we were to assume the prosecutor used threats and coercion, the alleged threats and coercion had no impact on Dalton as he did not plead guilty.

**¶17**          Second, Dalton argues the State violated his speedy trial rights, asserting the prosecutor's reasons for requesting continuances did not constitute extraordinary circumstances.  We reject this argument.

**¶18**          As noted above, a grand jury indicted Dalton on January 21, 2014.  Before he was indicted in January 2014, a prior grand jury had indicted Dalton for criminal trespass in the first degree.  On the State's motion, on March 13, 2014, the superior court dismissed the criminal trespass prosecution without prejudice, and the State proceeded with the charges against Dalton returned by the grand jury in the January 2014 indictment.

**¶19**          When the State elects to refile charges against a defendant, Rule 8 time limits "commence[] to run from the date" of the second arraignment.  *See State v. Johnson*, 113 Ariz. 506, 510, 557 P.2d 1063, 1067 (1976).  Dalton's Rule 8 time limits thus began to run on January 21, 2014. On May 5, 2014, defense counsel moved to continue the trial to the week of June 9, 2014.  The State did not object to counsel's motion, and the court granted the motion and excluded time between May 28 and June 9, 2014. Dalton's new last day became July 10, 2014.

**¶20**          On June 2, 2014, the State moved to continue the trial because Dalton had an older, unrelated pending case.  Defense counsel objected to the continuance, but the superior court granted the continuance, excluded time between June 9 and July 28, 2014, and set Dalton's last day as August 28, 2014.

**¶21**          On July 7, 2014, the State moved to continue the trial because the prosecutor in Dalton's older case was in trial on another matter and the

State's forensic interviewer in Dalton's older case was on maternity leave. Over defense counsel's objection, the superior court found extraordinary circumstances, continued the trial, excluded time between July 28 and August 18, 2014, and set Dalton's last day as September 18, 2014. Then, on August 12, 2014, defense counsel moved to continue the trial because of a scheduling conflict. Dalton waived time and the court excluded time between August 18 and October 28, 2014, and set Dalton's last day as December 4, 2014.

¶22 "Continuances are, to a great extent, discretionary with the trial court, and an appellate tribunal will not review its action in this respect unless it clearly appears that the discretion has been abused." *State v. Miller*, 111 Ariz. 321, 322, 529 P.2d 220, 221 (1974) (citation omitted) (internal quotation marks omitted). Here, the superior court did not abuse its discretion in granting the State's motions to continue given the pendency of Dalton's older case, the prosecutor's trial conflict, and the unavailability of the State's forensic interviewer.

¶23 Even if we assume, however, the superior court abused its discretion in granting one or both of the State's motions to continue, Dalton has not demonstrated any prejudice. *See State v. Vasko*, 193 Ariz. 142, 143, ¶ 3, 971 P.2d 189, 190 (App. 1998) ("[I]n the absence of a showing of prejudice, a speedy trial violation raised as error on appeal after conviction does not warrant reversal of that conviction."). Although he argues Day was no longer available to testify on his behalf because of the continuances, he has not explained how Day's absence prejudiced him. *See State v. Rose*, 24 Ariz. App. 25, 27, 535 P.2d 617, 619 (1975) (defendant's allegation of prejudice resulting from unavailable witness insufficient when no evidence presented "which would indicate that any specific unavailable witness's testimony would have been beneficial"). Accordingly, on the record before us, Dalton has not shown prejudice.

¶24 Dalton also argues the superior court was not entitled to sentence him as a category two repetitive offender. Because we are remanding for a new trial, we briefly address whether the superior court could sentence Dalton as a category two repetitive offender if convicted on remand.

¶25 Under the sentencing statutes in effect on the date of the alleged burglary offense—May 2, 2013—the superior court could sentence Dalton as a category two repetitive offender if it finds he has been convicted of "three or more felony offenses that were not committed on the same occasion but that either are consolidated for trial purposes or are not historical prior felony convictions." Ariz. Rev. Stat. ("A.R.S.") § 13-703(B)(1)

(Supp. 2012). Before trial, the State alleged Dalton had been convicted of eight prior felonies from the State of Washington. Dalton could be sentenced as a category two repetitive offender if he is convicted on remand and the State properly proves that at least two of these Washington felonies meet the requirements of A.R.S. § 13-703(B)(1). *See State v. Smith*, 228 Ariz. 126, 129-31, ¶¶ 12-18, 263 P.3d 675, 678-80 (App. 2011) (prior conviction counted with current conviction to determine whether defendant qualifies as a category one repetitive offender under the 2008 version of A.R.S. § 13-703(A) that, inter alia, required defendant to be convicted of two felony offenses not committed on the same occasion).

¶26         Alternatively, the court could sentence Dalton as a category two repetitive offender if it finds he was "at least eighteen years of age or has been tried as an adult and stands convicted of a felony and has one historical prior felony conviction." A.R.S. § 13-703(B)(2) (Supp. 2012). The State alleged that one of the eight prior Washington felonies included a conviction for "controlled substance possession." At the time of Dalton's alleged burglary offense, A.R.S. § 13-105(22)(e) (Supp. 2012) defined a historical prior felony conviction as including "[a]ny offense committed outside the jurisdiction of this state that was punishable by that jurisdiction as a felony" and which was "committed within the five years immediately preceding the date of the present offense." Although the record reflects Dalton committed the Washington controlled substance possession felony in either March or June 2007,[7] the record contains evidence that reflects he was subsequently incarcerated for various periods of time for other offenses. Time spent incarcerated is excluded from the five-year calculation. *Id.* ("Any time spent . . . incarcerated is excluded in calculating if the offense was committed within the preceding five years."); *see State v. Rodriguez*, 227 Ariz. 58, 60-61, ¶¶ 8-11, 251 P.3d 1045, 1047-48 (App. 2010) (statute excluding time spent incarcerated from calculation of statutory period for a historical felony not limited to time spent as a result of a conviction of a crime, but also includes time spent in jail before sentencing); *State v. Derello*, 199 Ariz. 435, 439, ¶ 22, 18 P.3d 1234, 1238 (App. 2001) (plain meaning of phrase "any time spent incarcerated" indicates Legislature intended to exclude "all time that a defendant spent in prison, regardless of whether that incarceration was for the particular prior conviction at issue or for some other crime"). Accordingly, if the State properly proves Dalton committed this particular Washington offense within five years of the alleged burglary,

---

[7]Although the State alleged Dalton committed this offense on June 10, 2007, the criminal history portion of the pre-sentence report reported that he had committed the offense on March 10, 2007.

excluding time spent incarcerated, then the superior court could sentence him as a category two repetitive offender under A.R.S. § 13-703(B)(2).

**CONCLUSION**

**¶27** For the foregoing reasons, we vacate Dalton's conviction and sentence for burglary in the second degree and remand for a new trial.

**C A T T A N I**, Judge, dissenting:

**¶28** I respectfully dissent from the majority's ruling that the superior court's failure to instruct the jurors to deliberate anew resulted in reversible error. Although I agree that an instruction to deliberate anew is required under Rule 18.5(h) when an alternate juror is substituted for an excused juror, in this case, the unobjected-to failure to instruct the jurors regarding deliberating anew did not rise to the level of fundamental, prejudicial error under *State v. Henderson*, 210 Ariz. 561, 115 P.3d 601 (2005).

**¶29** Under *Henderson*, "[a] defendant who fails to object at trial forfeits the right to obtain appellate relief except in those rare cases that involve 'error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial.'" 210 Ariz. at 567, ¶ 19, 115 P.3d at 607 (citation omitted). *Henderson* further holds that a defendant bears the burden of persuasion in fundamental error review to "establish both that fundamental error exists and that the error in his case caused him prejudice." *Id*. at ¶ 20.

**¶30** Here, the error did not go to the foundation of the case or take away a right essential to the defense such that Dalton "could not possibly have received a fair trial," and Dalton has not met his burden of showing prejudice. *See id*. at 567–71, ¶¶ 19, 26–34, 115 P.3d at 607–10 (citation omitted).

**¶31** The majority relies primarily on a pre-*Henderson* case, *State v. Guytan*, 192 Ariz. 514, 968 P.2d 587 (App. 1998), which held that when a new juror is substituted for an excused juror, it is error not to instruct jurors to deliberate anew as required by Rule 18.5, while also holding that the error in that case did not require reversal. Contrary to the majority's assertion, the analysis set forth in *Guytan* did not provide a framework for error review that "overlaps" with fundamental error review under *Henderson*.

Moreover, in *Guytan*, the court in fact noted that some jurisdictions do not have a statute or rule expressly requiring an instruction such as that mandated by Rule 18.5, while further noting that in those jurisdictions, courts "typically and wisely" impose such a requirement. *Id*. at 521, ¶ 23, 968 P.2d at 594. But reliance on a "typical" and "wise" approach is not co-terminous with an evaluation of whether unobjected-to error is fundamental and prejudicial under *Henderson.*

**¶32** Dalton does not come close to meeting his burden of establishing fundamental, prejudicial error. The jurors were correctly instructed regarding the elements of second-degree burglary and the State's burden of proof. *Compare State v. Ruiz*, 236 Ariz. 317, 340 P.3d 396 (App. 2014) (reversing based on instructional error relating to the State's burden of proving the charged offense). Although the jurors were not instructed to deliberate anew, they were instructed that (1) they should not form final opinions until they had discussed the case with each other in the jury room; (2) their verdict "must be unanimous" and "everyone must agree"; (3) they were required to discuss their own personal views "as well as the views of the other jurors"; and (4) they were prohibited from "tak[ing] a vote until [they had] discussed all the evidence in this case." There is no indication whatsoever that the jurors who decided this case failed to understand and comply with these directives. *See also State v. LeBlanc*, 186 Ariz. 437, 439, 924 P.2d 441, 443 (1996) (reiterating presumption that jurors follow their instructions).

**¶33** In light of our standard of review, and absent some indication otherwise, the majority errs by hypothesizing that the jurors voted without discussing all the evidence in the case or that all of the jurors did not agree on the verdict. Moreover, the jurors were individually polled in this case, and every juror—including the alternate juror—confirmed that the verdict was his/her true verdict. Under these circumstances, the failure to instruct the jurors as required by Rule 18.5 was not prejudicial error of such magnitude that Dalton could not possibly have received a fair trial.

**¶34** The majority's reliance on *Guytan* is further undermined by the absence in the instant case of the particular concern underlying the discussion of error in *Guytan*:

> The requirement that jurors begin deliberations anew after a substitution guards against the potential problems that substitution poses. In particular, if deliberations have begun, *some issues already may have been decided as a practical matter.* In that case, there is an inherent risk that the resulting verdict as to those issues will reflect only the views of the original jurors,

13

thereby depriving the defendant of his right to unanimity from the requisite number of jurors.

192 Ariz. at 521, ¶ 22, 968 P.2d at 594 (emphasis added) (citing *People v. Burnette*, 775 P.2d 583, 588 (Colo. 1989); *People v. Collins*, 552 P.2d 742, 746 (Cal. 1976)).[8]

**¶35** Here, there is no evidence—or even suggestion—that the jurors decided "some issues" relating to Dalton's conviction before the substitute juror joined in deliberations. Dalton was convicted of only one offense—burglary—stemming from his alleged involvement with another man, Brian Day, in taking a swamp cooler from a vacant home. Dalton testified at trial and acknowledged that he was trespassing by sleeping at the vacant residence, but claimed he did not know Day planned to remove the swamp cooler, and that his only involvement was persuading Day to leave the house with him so Day would not "get[] in trouble."

**¶36** Given Dalton's admission to being present at the scene of the burglary and leaving with Day, the only question for the jurors was whether they believed Dalton's testimony that he did not intend to assist in removing the swamp cooler. Answering that question did not involve a complex inquiry, and there were no other issues to resolve; thus the concern underlying *Guytan* is absent and undermines any assertion of prejudice resulting from the unobjected-to failure to give the Rule 18.5 instruction.

**¶37** The majority cites the fact that the jurors "deliberated for approximately two hours before the alternate joined it, but for less than 45 minutes afterwards." But the pre-substitution deliberations included

---

[8] As the majority notes, the *Guytan* court listed four "problems inherent" in substituting an alternate juror once deliberations have begun: (1) the other jurors may have already resolved relevant issues, leaving the alternate no opportunity to express her views and persuade others; (2) the alternate would not have the benefit of the discussions and dynamics of prior deliberations; (3) the alternate would not have the benefit of the unavailable juror's views; and (4) the unavailable juror might have feigned a conflict for some improper purpose. *See supra* ¶ 8; *Guytan*, 192 Ariz. at 518, ¶ 11, 968 P.2d at 591. But an instruction to "deliberate anew" does not address the second and third concerns. And the fourth concern—that the unavailable juror left deliberations for some impermissible reason—is not implicated in this case; the excused juror asked to be relieved of her duties because of child care issues. Accordingly, the only issue remaining—and the one on which *Guytan* focused as well—is whether some issues have already been decided.

selecting a foreperson and asking and waiting for an answer to a question, "[w]hy wasn't the 911 caller subpoenaed," that was not relevant to resolving the burglary charge. Thus, the pre-substitution deliberations were not necessarily extensive, and, again, there is no evidence that any issues were resolved during those deliberations.

¶38    The fact that the jurors returned a verdict less than 45 minutes after the substitute juror joined the jury does not establish fundamental error or resulting prejudice. As noted above, this was a simple case, and the relatively short period of post-substitution deliberations is not surprising given the lack of complexity involved in deciding whether Dalton was believable when he denied assisting with the burglary (while admitting to being present and trespassing).

¶39    A substitute juror can properly reach a verdict without having participated in every discussion relevant to the ultimate issue as long as the substitute juror fully deliberates and reaches an independent verdict. *See State v. Tucker*, 215 Ariz. 298, 319, ¶ 83, 160 P.3d 177, 198 (2007) (finding no error—and no need for a Rule 18.5 instruction—when a juror is substituted between the aggravation and penalty phases of a capital case sentencing proceeding notwithstanding some degree of overlap in issues considered in the two phases) (citing *State v. Roseberry*, 210 Ariz. 360, 372–73, ¶ 71, 111 P.3d 402, 414–15 (2005)).

¶40    Here, any suggestion that the substitute juror did not fully deliberate is simply speculation and improperly ignores the substitute juror's affirmative statement that the verdict of guilt represented her true individual verdict. *See State v. Kiper*, 181 Ariz. 62, 68, 887 P.2d 592, 598 (App. 1994) ("The purpose of polling the jury is to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict which the foreman has returned, and thus to enable the court and the parties to ascertain with certainty that a unanimous verdict has in fact been reached[.]") (quotation omitted). There is nothing in the record suggesting that issues were resolved prior to the dismissal of the excused juror, and the remaining jurors and the substitute juror were adequately instructed regarding their duty to reach a unanimous verdict.

¶41	Under the circumstances, and particularly in light of the fact that the jurors all individually confirmed their verdicts (without any hint of ambivalence) when they were polled following deliberations, Dalton has not met his burden of establishing that this is the "rare case" in which the unobjected-to instructional error resulted in prejudice and was of such magnitude that it cannot be said that he received a fair trial. Accordingly, I would affirm his conviction and sentence.

