IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

STATE OF ARIZONA,
*Appellee*,

*v.*

DONALD WAYNE DALTON,
*Appellant*.

No. CR-16-0012-PR
Filed December 22, 2016

Appeal from the Superior Court in Maricopa County
The Honorable Michael W. Kemp, Judge
No. CR2014-000938
**AFFIRMED**

Opinion of the Court of Appeals, Division One
239 Ariz. 74, 366 P.3d 133 (App. 2016)
**VACATED**

COUNSEL:

Mark Brnovich, Attorney General, John R. Lopez IV, Solicitor General, Joseph T. Maziarz, Chief Counsel, Linley Wilson (argued), Assistant Attorney General, Criminal Appeal Section, Phoenix, Attorneys for State of Arizona

James J. Haas, Maricopa County Public Defender, Paul J. Prato (argued), Deputy Public Defender, Phoenix, Attorneys for Donald Wayne Dalton

VICE CHIEF JUSTICE PELANDER authored the opinion of the Court, in which CHIEF JUSTICE BALES and JUSTICES BRUTINEL, TIMMER, and BOLICK joined.

_____

VICE CHIEF JUSTICE PELANDER, opinion of the Court:

¶1        Under Arizona Rule of Criminal Procedure 18.5(h), when a trial court permits the mid-deliberation substitution of a juror, the court must instruct all jurors, including the alternate, "to begin deliberations anew."  When, as here, a defendant does not object to a trial court's failure to give that instruction and is then convicted, the defendant must establish on appeal that the omission constituted fundamental error.  Because defendant Donald Wayne Dalton has not shown prejudice from the trial court's failure to give the "deliberate-anew" instruction, we affirm his conviction and sentence.

**I.**

¶2        In May 2003, a 911 caller reported seeing a man, later identified as Brian Day, on a vacant home's roof attempting to remove a swamp cooler.  The witness also reported seeing another man, who turned out to be Dalton, in an alley behind the home.  The witness then informed the police that the two men were walking away from the home together.  An officer arrived, stopped the pair, and, after questioning, arrested them.  Dalton was charged with second degree burglary and criminal damage.  The State alleged that he was an accomplice.

¶3        At the close of evidence after a two-day trial, the trial court's instructions to the jury included the following: 1) the verdict must be unanimous; 2) the jurors must discuss all of the evidence before taking a vote; and 3) they must carefully and impartially consider all evidence in the case.  Just before deliberations, one juror was designated as an alternate in accordance with Rule 18.5(h).  Before releasing the alternate juror, the court informed her that she was still bound by the admonitions the jury received two days earlier at the beginning of trial (including the admonition to form final opinions only after hearing the final instructions and discussing the case with the other jurors during deliberations).  The jury then retired and deliberated for just over two hours before stopping for the day.  Because one juror could not return the next day, the parties agreed to replace her with the alternate juror.

¶4        The jury reconvened the next morning with the alternate juror. The trial court did not instruct the jury to begin deliberations anew and neither party objected. After about forty-three minutes, the jury returned its verdict finding Dalton guilty of second degree burglary and not guilty of criminal damage. The trial court then polled the jurors individually and each confirmed that the verdict was his or her true verdict.

¶5        In a split decision, relying largely on *State v. Guytan*, 192 Ariz. 514, 968 P.2d 587 (App. 1998), the court of appeals vacated Dalton's conviction and sentence and remanded for a new trial. *State v. Dalton*, 239 Ariz. 74, 75-76 ¶ 1, 81 ¶ 27, 366 P.3d 133, 134-35, 140 (App. 2016). The majority concluded that the trial court's failure to instruct the jury to begin deliberations anew violated Dalton's right to a unanimous verdict under article 2, section 23 of the Arizona Constitution and thus was fundamental error. *Id.* at 77 ¶¶ 7-8, 366 P.3d at 136. The majority also found the error prejudicial because the court could not "say beyond a reasonable doubt that the jury would have reached the same result had the superior court properly instructed it to begin deliberations anew when the alternate joined it." *Id.* at 79 ¶ 14, 366 P.3d at 138.

¶6        The dissenting judge concluded that "the unobjected-to failure to instruct the jurors regarding deliberating anew did not rise to the level of fundamental, prejudicial error." *Id.* at 81 ¶ 28, 366 P.3d at 140. (Cattani, J., dissenting). Pointing to the simple facts underlying the case and the trial court's post-verdict polling of each juror, *id.* at 82 ¶ 33, 83 ¶¶ 36, 38, 366 P.3d at 141, 142, the dissent found "nothing in the record suggesting that issues were resolved prior to the dismissal of the excused juror, and the remaining jurors and the substitute juror were adequately instructed regarding their duty to reach a unanimous verdict." *Id.* at 83 ¶ 40, 366 P.3d at 142.

¶7        We granted review to clarify the standard for evaluating prejudice when a trial court, without objection, fails to give a "deliberate-anew" instruction under Rule 18.5(h). We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

¶8        Preliminarily, we reject Dalton's belated argument, first made in his supplemental brief in this Court, that the trial court's failure to give a deliberate-anew instruction constitutes structural error that automatically

requires reversal. *See State v. Valverde*, 220 Ariz. 582, 585 ¶ 10, 208 P.3d 233, 236 (2009) ("If an appellate court finds structural error, reversal is mandated regardless of whether an objection is made below or prejudice is found. If error is structural, prejudice is presumed."). As we recently stated, "the omission of [the deliberate-anew instruction] does not always require reversal of a conviction." *State v. Kolmann*, 239 Ariz. 157, 162 ¶ 19, 367 P.3d 61, 66 (2016).

**¶9** Structural errors "deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *State v. Ring* (*Ring III*), 204 Ariz. 534, 552 ¶ 45, 65 P.3d 915, 933 (2003) (internal quotation marks omitted) (quoting *Neder v. United States*, 527 U.S. 1, 8-9 (1999)). Such errors are very limited in nature and number inasmuch as they "affect the entire conduct of the trial from beginning to end, and thus taint the framework within which the trial proceeds." *State v. Henderson*, 210 Ariz. 561, 565 ¶ 12, 115 P.3d 601, 605 (2005) (internal quotation marks omitted) (quoting *State v. Anderson*, 197 Ariz. 314, 323 ¶ 22, 4 P.3d 369, 378 (2000)).

**¶10** We recognize that a trial court's failure to give a deliberate-anew instruction to a reconstituted jury, as Rule 18.5(h) requires, is different from evidentiary, trial, or other types of instructional error. And proving that noncompliance with Rule 18.5(h) prejudiced a defendant might be difficult given the confidentiality of jury deliberations and the constraints on probing the motives or mental processes of jurors. *See* Ariz. R. Crim. P. 24.1(d); *see also Kolmann*, 239 Ariz. at 161 ¶ 15, 367 P.3d at 65 (stating that courts generally prohibit inquiry into how a jury or individual juror deliberated or reached a decision). Despite the potential challenges in proving prejudice, a trial court's failure to give a deliberate-anew instruction does not fall within the very limited category of errors that are structural. *See Ring III*, 204 Ariz. at 552 ¶ 46, 65 P.3d at 933 ("The Supreme Court has defined relatively few instances in which we should regard error as structural.").

## III.

**¶11** Because Dalton did not object to the trial court's failure to instruct the reconstituted jury to begin deliberations anew, he must show fundamental error. *Henderson*, 210 Ariz. at 567 ¶ 19, 115 P.3d at 607. To establish fundamental error, Dalton of course must first show error. *Id.* at 568 ¶ 23, 115 P.3d at 608. He has done so here, as the State correctly

concedes that the trial court erred in not giving the deliberate-anew instruction once the alternate joined the reconstituted jury. *See Kolmann*, 239 Ariz. at 162 ¶ 19, 367 P.3d at 66 ("After the alternate juror joined the deliberations, the trial court should have instructed the entire jury to begin deliberations anew" under Rule 18.5(h), despite neither side requesting that instruction.).

¶12 To carry his burden of showing fundamental error, Dalton must establish that the nature of the error 1) "goes to the foundation of [the] case," 2) "takes away a right that is essential to his defense," and 3) "is of such magnitude that he could not have received a fair trial." *Henderson*, 210 Ariz. at 568 ¶ 24, 115 P.3d at 608; *see also Valverde*, 220 Ariz. at 585 ¶ 12, 208 P.3d at 236. The burden of persuasion remains on the defendant in order "to discourage a defendant from tak[ing] his chances on a favorable verdict, reserving the hole card of a later appeal on [a] matter that was curable at trial, and then seek[ing] appellate reversal." *Henderson*, 210 Ariz. at 567 ¶ 19, 115 P.3d at 607 (internal quotation marks omitted).

¶13 Although the issue is debatable, we assume, without deciding, that the trial court fundamentally erred in failing to give the deliberate-anew instruction. *See Valverde*, 220 Ariz. at 586 ¶ 15, 208 P.3d at 237 (assuming without deciding that trial court's instructional omission was fundamental error but finding no prejudice). To prevail under fundamental-error review, however, "a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice." *Henderson*, 210 Ariz. at 567 ¶ 20, 115 P.3d at 607; *see also Valverde*, 220 Ariz. at 585 ¶ 12, 208 P.3d at 236. This is "a fact-intensive inquiry," and "[t]he showing a defendant must make varies, depending upon the type of error that occurred and the facts of a particular case." *Henderson*, 210 Ariz. at 568 ¶ 26, 115 P.3d at 608.

¶14 The error in *Henderson* "exist[ed] on two levels" — "[f]irst, the aggravating facts used to enhance Henderson's sentence were found by a judge instead of a jury, violating Henderson's Sixth Amendment right to a jury trial," and second, "the trial judge applied a preponderance standard, not the constitutionally required standard of beyond a reasonable doubt, violating Henderson's Fifth Amendment rights." *Id.* at 568 ¶ 25, 115 P.3d at 608. Thus, "the nature of the error involved [in that case] deprived Henderson of the opportunity to require that a jury find facts sufficient to expose him to an aggravated sentence." *Id.* at 569 ¶ 27, 115 P.3d at 609. Under those circumstances, this Court ruled that to establish prejudice,

"Henderson must show that a reasonable jury, applying the appropriate standard of proof, could have reached a different result than did the trial judge." *Id.*

¶15 Relying on that language in *Henderson*, the court of appeals in this case stated that, "[t]o show prejudice, Dalton bears the burden of showing that a reasonable jury 'could have reached a different result' had it been properly instructed under Rule 18.5(h)." *Dalton*, 239 Ariz. at 78 ¶ 9, 366 P.3d at 137 (quoting *Henderson*, 210 Ariz. at 569 ¶ 27, 115 P.3d at 609). But that standard, though appropriate in *Henderson* based on the nature of the errors in that case, does not fit the different situation here.

¶16 *Henderson* did not address any Rule 18.5(h) issue or other instructional error. And although the court of appeals treated the *Henderson* standard as broadly applicable, *Henderson* did not prescribe a general standard of prejudice for all jury-related instructional errors. Instead, we recognized for particular constitutional errors a specific standard of prejudice—whether the jury could have reached a different result than the trial court when the judge deprived Henderson of a jury trial on aggravating circumstances and applied an incorrect standard of proof. *Henderson*, 210 Ariz. at 565 ¶ 11, 568 ¶ 25, 115 P.3d at 605, 608. And we emphasized in *Henderson* that "the showing required to establish prejudice . . . differs from case to case." *Id.* at 568 ¶ 26, 115 P.3d at 608.

¶17 In addition, the court of appeals found prejudice because it "[could not] say beyond a reasonable doubt that the jury would have reached the same result had the superior court properly instructed it to begin deliberations anew when the alternate joined it." *Dalton*, 239 Ariz. at 79 ¶ 14, 366 P.3d at 138. But that conflates fundamental-error review with harmless-error review, which clearly does not apply here. *Cf. Valverde*, 220 Ariz. at 585 ¶ 11, 208 P.3d at 236 (noting that when a defendant properly objects at trial to non-structural error, the state must prove harmlessness by establishing beyond a reasonable doubt that, in light of all the evidence, "the error did not contribute to or affect the verdict"). Nor does the court of appeals' reliance on *Guytan* support a finding of prejudice in this case. *See Dalton*, 239 Ariz. at 78 ¶¶ 9-11, 366 P.3d at 137. Although *Guytan* addressed Rule 18.5(h) error and aptly explains the potential risks of juror substitution after deliberations have commenced, 192 Ariz. at 518 ¶ 11, 521 ¶¶ 21-22, 968 P.2d at 591, 594, *Guytan* pre-dated *Henderson* and did not clearly articulate the standard of review it applied in finding no "reversible error" in that case, *id.* at 521 ¶¶ 21-24, 968 P.2d at 594.

**¶18**        Under *Henderson*'s error-specific approach, Dalton must show that the trial court's failure to instruct the reconstituted jury to begin deliberations anew denied him a deliberative, impartial, unanimous jury verdict, not merely that the jury could have reached a different result had the instruction been given.  Applying this standard, we agree with the dissent below that Dalton failed to carry his burden of showing prejudice. 239 Ariz. at 81 ¶ 28, 83 ¶ 41, 366 P.3d at 140, 142 (Cattani, J., dissenting).

**¶19**        Contrary to the court of appeals majority's conclusion, we find that some of the trial court's "other instructions to the jury ameliorated the failure to instruct the jury it was required to begin its deliberations anew when the alternate  joined it." *Dalton*, 239 Ariz. at 78 ¶ 10, 366 P.3d at 137. At the close of evidence, the trial court instructed all jurors, including the alternate, that their verdict "must be unanimous" and "[e]veryone must agree"; they were required to discuss their own personal views "as well as the views of other jurors"; and they were to "carefully and impartially consider all of the evidence in this case" while refraining from "tak[ing] a vote until [they had] discussed all the evidence in the case."  Significantly, the jurors received those instructions less than twenty-four hours before the alternate re-joined them the next morning.   And in its preliminary instructions just two days earlier, the trial court admonished the jurors to form their final opinions only after they had heard the final instructions and had "an opportunity to discuss the case with each other" in deliberations. Before dismissing the alternate juror at the end of trial, the court expressly reminded her that those "admonition[s] still appl[y] to you."

**¶20**        We assume jurors follow the instructions they are given. *State v. Newell*, 212 Ariz. 389, 403 ¶ 68, 132 P.3d 833, 847 (2006).  As the *Dalton* dissent observed, "[t]here is no indication whatsoever that the jurors who decided this case failed to understand and comply with these directives." 239 Ariz. at 82 ¶ 32, 366 P.3d at 141 (Cattani, J., dissenting).  "[N]othing in the record suggest[s] that issues were resolved prior to the dismissal of the excused juror, and the remaining jurors and the substitute juror were adequately instructed regarding their duty to reach a unanimous verdict." *Id*. at 83 ¶ 40, 366 P.3d at 142 (Cattani J., dissenting).

**¶21**        The court's instructions required the alternate juror to consider and discuss all the relevant evidence and other jurors' views, and likewise required the other jurors to do the same.  In light of these instructions, the presumption that the jurors followed them, and the short time span between the trial court's instructions and the alternate juror's

returning for deliberations the next morning, we conclude that Dalton has not shown he was denied an impartial, deliberative, and unanimous verdict. *See Claudio v. Snyder*, 68 F.3d 1573, 1577 (3d Cir. 1995) (stating that phrase "begin [deliberations] anew" does not carry "talismanic power" when other instructions eliminated any disadvantage an alternate juror might have had); *Peek v. Kemp*, 784 F.2d 1479, 1485 (11th Cir. 1986) (concluding that although there was no deliberate-anew instruction, other instructions to the substitute juror corrected any error); *cf. Kolmann*, 239 Ariz. at 162 ¶¶ 18-20, 367 P.3d at 66 (in light of other instructions given to the jury, defendant did not establish how trial court's failure to instruct the alternate juror resulted in prejudice).

¶22          In addition, each juror, when polled, unreservedly confirmed that the verdict was his or her true verdict. That procedural safeguard lessened possible prejudice from the lack of a deliberate-anew instruction. *See* Ariz. R. Crim. P. 23.4 (permitting trial court to poll the jurors and to require further deliberations if a juror's response does not support the verdict).

¶23          The polling process also alleviated any concerns that the alternate juror might have simply acquiesced in a predetermined verdict as a result of coercion, unease, or incomplete deliberation. If the alternate juror or any other juror questioned the verdict, the polling allowed that juror to express disagreement or other concerns, which in turn would have prompted the court to take remedial action. *See* Ariz. R. Crim. P. 23.4; *State v. Rodriquez-Rosario*, 219 Ariz. 113, 115-17 ¶¶ 8-20, 193 P.3d 807, 809-11 (App. 2008) (vacating defendant's convictions when record reflected juror coercion and juror clearly stated during polling he did not agree with the verdict); *State v. Hernandez*, 147 Ariz. 312, 313, 709 P.2d 1371, 1372 (App. 1985) (when polling reveals a juror's reservations, if the court has any doubt it must return the jury for further deliberation or declare a mistrial). In short, the post-verdict polling helped ensure that Dalton received a unanimous verdict. *See State v. Kiper*, 181 Ariz. 62, 68, 887 P.2d 592, 598 (App. 1994) (quoting *Miranda v. United States*, 255 F.2d 9, 17 (1st Cir. 1958), to explain that polling permits the parties to "ascertain with certainty that a unanimous verdict has in fact been reached"); *see also United States v. Morris*, 612 F.2d 483, 489 (10th Cir. 1979) ("Polling is one means of ensuring unanimity.").

¶24          Pointing to the discrepancy in the amount of time the jury spent deliberating before versus after the substitution occurred, Dalton

argues that the alternate juror lacked "sufficient time to meaningfully deliberate the[] issues in the less than 43 minutes that the alternate was part of the reconstituted jury." Before the substitution the jury spent roughly two hours selecting a foreperson, submitting a question to the judge, and deliberating. The jury then retired for the evening, returned the next morning for deliberations with the substitute juror, and returned its verdict about forty-three minutes later. Because "the bulk of the jury's deliberations here occurred before the alternate joined the panel," the court of appeals found no "reasonable assurances that the reconstituted jury began deliberations anew, with each juror fully participating." *Dalton*, 239 Ariz. at 79 ¶ 12, 366 P.3d at 138.

¶25 Although the comparative time a jury spends deliberating before and after a juror substitution is relevant in determining whether the jury in fact deliberated after the substitution, it is not dispositive. *See Kolmann*, 239 Ariz. at 159 ¶ 2, 162 ¶ 20, 367 P.3d at 63, 66 (stating that the reconstituted jury's seventy-minute deliberation, after the original jury deliberated for "several hours," "does not itself suggest a failure by the jury to deliberate anew"); *cf. Martinorellan v. State*, 343 P.3d 590, 594 (Nev. 2015) (stating, under prejudice analysis related to the substitution of an alternate juror, courts consider the length of deliberations before and after substitution). The time comparison must consider the complexity of the issues and relative strength of each party's position.

¶26 Here, Dalton was prosecuted under an accomplice theory. An eyewitness alerted police that a man (Day) was on the roof of a nearby vacant home removing a swamp cooler. The witness told police that another man (Dalton) was also at the scene and that Dalton and Day were walking away together. Police stopped both men near the vacant home. Dalton first claimed they had not been at the house but rather were coming from a park. After giving inconsistent stories, Dalton admitted he had been living in the vacant home and was in the house that day, but he denied any criminal wrongdoing involving the swamp cooler. Dalton told the officer that Day was acting "stupid," and Dalton was merely trying to get Day "to leave the premises and [to] stop doing what he was doing" because he did not want Day to get in trouble.

¶27 At trial, Dalton testified that he had slept in the vacant house without permission, did not know Day planned to remove the swamp cooler, was with Day only because Day was "upset" and "depressed," and persuaded Day to leave the house with him so Day would not hurt himself

or get in trouble. The jury essentially had but one issue to consider: was Dalton at the vacant home to knowingly assist Day in stealing the swamp cooler or rather merely present at the house and then attempting to get Day help? At oral argument in this Court both parties acknowledged that resolution of that issue turned solely on Dalton's credibility. The reconstituted jury, including the substitute juror, could have readily and reasonably concluded in a short time that it did not believe Dalton's testimony and that he was guilty as an accomplice to burglary.

¶28 On this record, we cannot say that the jury's post-substitution deliberation of about forty minutes indicates that the verdict lacked sufficient deliberation or deprived Dalton of an impartial and unanimous verdict. The facts and issues were not complicated and the trial was short (less than two days of testimony). That the reconstituted jury reached its verdict in less than forty-five minutes, relative to the almost two hours the original jury spent deliberating the day before, "does not itself suggest a failure by the jury to deliberate anew." *Kolmann*, 239 Ariz. at 162 ¶ 20, 367 P.3d at 66. That is particularly so considering that on the first day of deliberations the jury had to elect a foreperson and submitted a question to the judge, and on the second day the other eleven jurors likely would have been more prepared to clearly and concisely express their views.

¶29 In sum, even if we assume the trial court's failure to give the deliberate-anew instruction to the reconstituted jury is fundamental error, Dalton has not carried his burden of establishing prejudice. We agree with the *Dalton* dissent that "any suggestion that the substitute juror did not fully deliberate is simply speculation and improperly ignores the substitute juror's affirmative statement that the verdict of guilt represented her true individual verdict." 239 Ariz. at 83 ¶ 40, 366 P.3d at 142 (Cattani, J., dissenting); *cf. State v. Munninger*, 213 Ariz. 393, 397 ¶ 14, 142 P.3d 701, 705 (App. 2006) (refusing to speculate whether sentencing judge could have come to a different result when record provided no support for such speculation).

**IV.**

¶30 Although Dalton has not established prejudice in this particular case, we again emphasize the potential problems and inherent risks that accompany any substitution of jurors after deliberations have begun. *See Kolmann*, 239 Ariz. at 162 ¶ 19, 367 P.3d at 66; *Guytan*, 192 Ariz. at 518 ¶ 11, 521 ¶¶ 21-22, 968 P.2d at 591, 594. Recognizing those concerns,

we strongly urge trial courts to comply with Rule 18.5(h) by giving a deliberate-anew instruction, whether or not requested. *See* Recommended Arizona Jury Instruction Standard Criminal 45 – Reconstituting the Jury, RAJI (Criminal) (4th ed. 2012). The instruction helps to safeguard several constitutional rights. *See* Ariz. Const. art. 2, § 23 (requiring a unanimous jury verdict in criminal cases); *Hurst v. Florida*, 136 S. Ct. 616, 621 (2016) (reaffirming the Sixth Amendment right of an accused to an impartial jury); *Williams v. Florida*, 399 U.S. 78, 100 (1970) (stating that essential feature of jury trial is the "interposition . . . of the commonsense judgment of a group of lay[persons], and in the community participation and shared responsibility that results from that group's determination of guilt or innocence"). The need to protect these rights becomes particularly acute when the trial court permits the substitution of an alternate juror after deliberations have begun. *See Guytan*, 194 Ariz. at 518 ¶ 11, 968 P.2d at 591 (recognizing that an alternate juror inserted into the deliberative process may lack the opportunity to fully participate and obtain the benefits of prior deliberations).

¶**31** Unlike Arizona, some states prohibit the mid-deliberation substitution of jurors or presume it is prejudicial. *Id.* at 519 ¶ 14, 968 P.2d at 592; *see Hayes v. State*, 735 A.2d 1109, 1119 n.2 (Md. Ct. App. 1999); *see also People v. Burnette*, 775 P.2d 583, 590 (Colo. 1989) (presuming prejudice when an alternate juror joins the jury mid-deliberation because state law only permitted replacement before the jury retired to consider its verdict); *State v. Miley*, 603 N.E.2d 1070, 1072, 1074-75 (Ohio Ct. App. 1991) (finding prejudice when no deliberate-anew instruction given after trial court violated rule against permitting mid-deliberation substitution). Although Arizona permits juror substitution after deliberations have commenced and does not presume prejudice in that scenario, the deliberate-anew instruction mandated by Rule 18.5(h) is a vital procedural safeguard designed to address the various concerns arising from this occurrence and to protect a defendant's constitutional rights. *See California v. Collins*, 552 P.2d 742, 745-47 (Cal. 1976) (requiring "the court instruct the jury to set aside and disregard all past deliberations and begin deliberating anew" in order to ensure "that a jury in a felony prosecution consist of 12 persons and that its verdict be unanimous"); *New Jersey v. Corsaro*, 526 A.2d 1046, 1052 (N.J. 1987) (noting that New Jersey permits an alternate juror substitution, but "the jury must be instructed in clear and unequivocal terms that it is to begin its deliberations anew"); *cf. Claudio*, 68 F.3d at 1575-76 (noting that no federal court has found mid-deliberation substitution to

violate either the Sixth or Fourteenth Amendment when the trial court implements procedural safeguards). Therefore, we again urge trial courts to be especially vigilant in cases where mid-deliberation juror substitution occurs and, even absent any request, to give the deliberate-anew instruction to the reconstituted jury.

**V.**

¶**32** The court of appeals' opinion is vacated, and Dalton's conviction and sentence are affirmed.