IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

STATE OF ARIZONA,
*Respondent,*

*v.*

KNUTE ECKHARD KOLMANN,
*Petitioner.*

No. CR-15-0172-PR
Filed March 16, 2016

Appeal from the Superior Court in Yavapai County
The Honorable Celé Hancock, Judge
No. CR 20061557
**AFFIRMED**

Memorandum Decision of the Court of Appeals, Division Two
No. 2 CA-CR 2015-0071-PR
Filed April 8, 2015
**AFFIRMED**

COUNSEL:

Wendy F. White (argued), White Law Offices, PLLC, Flagstaff, Attorney for
Knute Eckhard Kolmann

Sheila Sullivan Polk, Yavapai County Attorney, Steven A. Young (argued),
Deputy County Attorney, Prescott, Attorneys for State of Arizona

CHIEF JUSTICE BALES authored the opinion of the Court, in which VICE
CHIEF JUSTICE PELANDER, and JUSTICES BRUTINEL, TIMMER, and
BOLICK joined.

CHIEF JUSTICE BALES, opinion of the Court:

¶1        We affirm the trial court's summary dismissal of claims for
post-conviction relief asserting that defense counsel was ineffective and
juror misconduct occurred when the judge, without objection, replaced a
juror who said she could not judge anybody's guilt or innocence.

**I.**

¶2         A jury in 2010 found Knute Kolmann guilty on ten counts of sexual exploitation of a minor and one count of conspiracy to commit sexual exploitation of a minor.  On the sixth day of trial, after the jury had deliberated for several hours, the jury foreperson sent the trial judge a note stating that juror L.M. wanted to discuss a personal matter.  The judge, in the presence of counsel, called L.M. back into the courtroom and asked, "What is your concern?"  L.M. replied, "did you say [earlier] there were some things we could not talk to you about?"  After cautioning L.M. not to discuss "what is going on in the jury room or anything having to do with the deliberations," the judge asked if she had some other personal matter concerning the jury's reconvening the next week.  L.M. responded that she did not feel qualified to be a juror, stating "I feel like I can't judge anybody" and that she "was wrong" in not saying so earlier.

¶3         Counsel declined to question L.M. further.  The judge asked L.M. if there was "anything more that [she] wanted to say on this issue" and if it was "just a matter of not feeling like [she] can make a judgment in this particular case."     She reaffirmed that she could not make a judgment for personal reasons but said nothing else.  Without objection by counsel, the judge excused L.M. from the jury and replaced her with an alternate juror.

¶4         After excusing L.M., the judge instructed the remaining eleven jurors that when they were joined by the alternate juror, who had not "had the benefit of the discussions" that had occurred "already within the jury room," they "to some extent . . . are going to have to start over again and involve her in discussions with regard to any individual and all of the counts, generally."  When the jury reconvened five days later with the alternate juror, it deliberated about seventy minutes and returned a verdict finding Kolmann guilty on all counts.  The trial court imposed consecutive sentences of imprisonment totaling 155 years, and the court of appeals affirmed the convictions and sentences on appeal.  *State v. Kolmann*, No. 1 CA-CR 10-0378, at *1 ¶ 1 (Ariz. App. March 22, 2012) (mem. decision).

¶5         In 2013, Kolmann filed a Rule 32 petition for post-conviction relief based on a 2013 affidavit by L.M., who stated she had asked to be dismissed in 2010 by telling the judge she "did not feel competent to be a

juror or to judge anyone." Noting that this was true, L.M. added that she especially did not want to stay on the jury because she was the only one not convinced of Kolmann's guilt, did not want to cause a hung jury, and was overwhelmed by the grave task of determining someone's guilt. L.M. said that one reason she did not feel competent was that she did not "understand the law well enough" and another reason was that while she was not convinced the defendant was innocent, she also was not convinced he was guilty. She noted that when she asked to be dismissed, she would have voted "not guilty" if the jury had taken a vote then. L.M. also recounted that another juror had told her that if she wanted the judge to "let her go," she should tell the court that she did not feel competent to judge another person rather than saying she disagreed with her fellow jurors.

¶6        Kolmann raised three claims in his petition for post-conviction relief related to L.M.'s dismissal from the jury: ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and juror misconduct. The trial court summarily dismissed the petition for failure to state a colorable claim. The court of appeals granted review but denied relief.

¶7        We granted review because the standard for summary dismissal of Rule 32 petitions alleging juror misconduct is an issue of statewide importance. We have jurisdiction pursuant to article 6, section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

¶8        Summary dismissal of a petition for post-conviction relief is appropriate "[i]f the court . . . determines that no . . . claim presents a material issue of fact or law which would entitle the defendant to relief under this rule and that no purpose would be served by any further proceedings." Ariz. R. Crim. P. 32.6(c). Stated differently, a petition that fails to state a colorable claim may be dismissed without an evidentiary hearing. As we recently explained, "[t]he relevant inquiry for determining whether the [defendant] is entitled to an evidentiary hearing is whether he has alleged facts which, if true, would *probably* have changed the verdict or sentence. If the alleged facts would not have probably changed the verdict or sentence, then the claim is subject to summary dismissal." *State v. Amaral*, __ Ariz. __, __ ¶ 11, -- P.3d --, -- (2016). We review the trial court's summary dismissal of a Rule 32 petition for an abuse of discretion. *See id.*

at __ ¶ 9, -- P.3d at --; *see also State v. Bennett*, 213 Ariz. 562, 566 ¶ 17, 146 P.3d 63, 67 (2006).

**A.**

**¶9**        First, we address Kolmann's claims of ineffective assistance of counsel.  To state a colorable claim, a petitioner must show "both that counsel's performance fell below objectively reasonable standards and that this deficiency prejudiced [him]."  *Bennett*, 213 Ariz. at 567 ¶ 21, 146 P.3d at 68 (*citing Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *see also Hinton v. Alabama*, 134 S. Ct. 1081, 1088-90 (2014) (discussing constitutional deficiency and prejudice prongs of the *Strickland* test).  To establish deficient performance, a defendant must show that his counsel's assistance was not reasonable under prevailing professional norms, "considering all the circumstances."  *Hinton*, 134 S. Ct. at 1088 (quoting *Strickland*, 466 U.S. at 688).  To establish prejudice, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 1089 (quoting *Strickland*, 466 U.S. at 694).  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.*, quoting *Strickland*, 466 U.S. at 695.

**¶10**        In reviewing claims of ineffective assistance, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  A defendant can overcome this presumption by showing that counsel's decisions were not tactical or strategic in nature, but were instead the result of "ineptitude, inexperience, or lack of preparation."  *State v. Goswick*, 142 Ariz. 582, 586 691 P.2d 673, 677 (1984).

**¶11**        Kolmann argues that he is entitled to an evidentiary hearing on his ineffective assistance claims.  He contends his trial counsel was ineffective by: (1) waiving Kolmann's right to be present during the juror substitution proceedings; (2) failing to question L.M. about her reasons for requesting dismissal from the jury and not objecting to her dismissal; and (3) failing to ask the trial court to instruct the reconstituted jury to begin deliberations anew pursuant to Arizona Rule of Criminal Procedure 18.5(h).  He also argues that his appellate counsel was ineffective by not raising the trial court's compliance with Rule 18.5(h) as an issue on direct appeal.

**¶12**        Kolmann argues that his trial counsel erroneously waived his presence during the juror substitution proceedings. Defendants have the right, rooted in the Sixth Amendment, to be present at every stage of the trial. Ariz. R. Crim. P. 19.2 (A defendant "has the right to be present at every stage of the trial, including the impaneling of the jury [and] the giving of additional instructions . . . "); *State v. Dann*, 205 Ariz. 557, 571 ¶ 53, 74 P.2d 231, 245 (2003). But that right is not absolute and it may be waived by defendants or their counsel. *See State v. Rose*, 231 Ariz. 500, 504 ¶ 9, 297 P.3d 906, 910 (2013) (explaining that "a trial court may rely on counsel's waiver of a defendant's right to be present in certain circumstances; personal waiver by the defendant is not required") (internal citations omitted).

**¶13**        Kolmann has failed to state a colorable claim with regard to counsel's waiving his presence. Even if we assume, without deciding, that counsel fell below professional standards in this respect, Kolmann has not attempted to show how his absence prejudiced him. *Cf. State v. Guytan*, 192 Ariz. 514, 520 ¶ 17 & n.4, 968 P.2d 587, 593 (App. 1998) (noting that "[i]t is not good practice" for trial counsel to waive defendant's presence without consulting defendant "when issues of substance are before the court," but harmless-error analysis applies to defendant's absence during juror substitution).

**¶14**        Kolmann also argues that trial counsel rendered ineffective assistance by not questioning L.M. when she asked to be excused from the jury. This failure, Kolmann maintains, cannot be characterized as a strategic decision because it resulted from his counsel's acknowledged inexperience with the particular situation. Kolmann argues that if defense counsel had further questioned L.M., she would have revealed that she was seeking dismissal to avoid being the lone holdout - an improper reason for dismissal. He posits that if L.M. had remained on the panel, there is a reasonable probability that the trial would have ended with a hung jury.

**¶15**        Kolmann has not overcome the presumption that his lawyer acted within the range of reasonable professional assistance in not asking L.M. any questions. The judge properly cautioned L.M. not to discuss the jury's deliberations, which preserved the confidentiality of the deliberations and avoided the danger of coercing a verdict. *Cf. State v. Huerstel,* 206 Ariz. 93, 100 ¶¶ 19-20, 75 P.3d 698, 705 (2003) (noting that a court's jury instructions and knowledge of jury split are factors in assessing whether a verdict was coerced); *State v. Sabala*, 189 Ariz. 416, 419, 943 P.2d

776, 779 (App. 1997) (noting that when a judge learns of jury impasse the, "better practice . . . is for the court to instruct jurors to refrain from revealing the numerical split and whether they are inclined to acquit or convict"). "As a general rule, no one - including the judge presiding at a trial - has a 'right to know' how a jury, or any individual juror, has deliberated or how a decision was reached by a jury or juror. The secrecy of deliberations is the cornerstone of [the] jury system." *United States v. Thomas*, 116 F.3d 606, 618 (2d Cir. 1997).

¶16 Given the judge's direction to L.M. not to reveal the jury's deliberations and her reaffirmation, after the judge asked if she had anything more to say, that "it was just a matter" of her not being able to judge anyone, the record does not suggest Kolmann's counsel acted unreasonably by not independently questioning L.M. Defense counsel, the prosecutor, and the judge discussed whether to ask L.M. any additional questions and none chose to do so. That defense counsel had no experience with a similar situation does not itself suggest a failure to meet reasonable professional standards. The trial judge noted his own unfamiliarity with a juror belatedly revealing that she was incapable of "judging anybody," and Kolmann has not identified any facts or legal authority suggesting that defense counsel here was acting outside "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

¶17 Nor has Kolmann stated a colorable claim that counsel was ineffective for failing to object to the trial court's dismissal of L.M. Under Arizona Rule of Criminal Procedure 18.5(h), trial judges have broad discretion to excuse a deliberating juror "due to inability or disqualification to perform required duties," and to substitute an alternate juror. Once L.M. disclosed she could not judge anybody for personal reasons, the judge was authorized to replace her with an alternate. Defense counsel did not act incompetently by failing to object to what Rule 18.5(h) expressly allowed.

¶18 Kolmann argues that his trial counsel was also ineffective by failing to ask the judge to instruct the reconstituted jury "to begin deliberations anew" as required by Rule 18.5(h). After dismissing L.M., the judge instructed the remaining eleven jurors that "[e]ssentially, [the alternate juror] hasn't had the benefit of the discussions with you of what has taken place already within the jury room. So to some extent you are going to have to start over again and involve her in discussions with regard to any individual and all of the counts, generally." Before excusing the

6

eleven jurors for the weekend, he told them that, when they reassembled the following week with the alternate juror, "Don't start deliberating until all 12 are present. Don't even discuss the case. Just talk about sports or the weather or whatever else you want to talk about until everybody is there, because everybody is entitled to each other's full discuss [sic] of the situation." The alternate juror was not present when the trial court gave these instructions, the instructions were not submitted in writing, and counsel did not request that they be repeated to the reconstituted panel.

¶19 After the alternate juror joined the deliberations, the trial court should have instructed the entire jury to begin deliberations anew. *See* Ariz. R. Crim. P. 18.5(h). The rule mandates such an instruction "[i]f an alternate joins the deliberations." *Id.* Counsel's failure to ask for such an instruction, however, does not constitute ineffective assistance under *Strickland* because Kolmann cannot show prejudice. Although instructing jurors to "begin deliberations anew after a substitution guards against the potential problems that substitution poses," *Guytan*, 192 Ariz. at 521, 968 P.2d at 594, the omission of such an instruction does not always require reversal of a conviction. *Id.*; *see also Claudio v. Snyder*, 68 F.3d 1573, 1577 (3d Cir. 1995) ("The fact that the . . . trial court did not specifically instruct the jury to begin its deliberations anew is not dispositive.").

¶20 Here, all the jurors except the alternate were instructed that, to some extent, they "were going to have to start over" by involving the alternate in discussions about each of the counts. Although the court did not strictly follow Rule 18.5(h) by saying "to some extent," it expressed the need to start deliberations anew by involving the alternate in discussing all of the counts, and we presume the original eleven jurors followed this instruction. *State v. Martinez*, 230 Ariz. 208, 216 ¶ 40, 282 P.3d 409, 417 (2012). The alternate only first began deliberating when she joined the jury; if the others followed the court's instructions to "start over" once she joined them, the entire jury began deliberating anew. That the reconstituted jury reached its verdict after about seventy minutes does not overcome the presumption, as that time span does not itself suggest a failure by the jury to deliberate anew. Given the presumption, Kolmann has not identified how the failure to give the instruction to the alternate juror resulted in prejudice.

¶21 Kolmann also makes no colorable claim of ineffective assistance of appellate counsel regarding the Rule 18.5(h) instruction.

Appellate counsel did not raise this issue on direct appeal. Because trial counsel failed to object, appellate counsel would have had to argue that the trial court's failure to instruct the entire jury to begin anew constituted fundamental error that prejudiced Kolmann. *State v. Valverde*, 220 Ariz. 582, 584 ¶ 12, 208 P.3d 253, 255 (2009). Given Kolmann's inability to show prejudice, *see supra* ¶ 20, appellate counsel did not fall below professional standards by not raising the Rule 18.5(h) issue on appeal.

**B.**

**¶22**       Kolmann also claims that his right to a unanimous and impartial jury was violated by juror misconduct due to L.M.'s lack of candor about why she wanted to be excused and the second juror's advice to L.M. about what to tell the court to improve her chances of dismissal. This claim fails for several reasons.

**¶23**       Juror misconduct may warrant a new trial when, among other things, a juror "[p]erjures himself or herself or willfully fail[s] to respond fully to a direct question posed during the voir dire examination." Ariz. R. Crim. P. 24.1(c)(3)(iii). This rule, however, does not avail Kolmann. In her 2013 affidavit, L.M. stated that she truthfully told the judge that she wanted to be dismissed because she did not feel competent to be a juror or to judge anyone. Given the judge's initial directive to L.M. not to reveal discussions within the jury room or anything related to deliberations, the record does not suggest that L.M. perjured herself or willfully failed to respond fully to a direct question when she discussed her reasons for seeking to be excused.

**¶24**       Although Rule 24.1(c)(3) does not by its terms encompass the second juror's alleged misconduct, we agree that a juror commits misconduct by offering another juror strategic advice on how to seek removal from the jury. Conceivably, such improper communications could be grounds for a new trial under Rule 24.1(c)(5) if "the defendant has not received a fair and impartial trial." Although Rule 24.1(d) prohibits inquiry into the "subjective motives or mental processes which led a juror to assent or dissent from the verdict," *see State v. Walker*, 181 Ariz. 475, 483, 891 P.2d 942, 950 (1995), we assume for present purposes that this rule would not apply to either L.M.'s communications, since she did not participate in the verdict, or the second juror's advice to L.M., insofar as it did not pertain to any reasons for that juror's assent to the eventual verdict.

¶25 Because claims of juror misconduct can be raised on post-trial motion under Rule 24, Kolmann generally is precluded from raising them in a petition for post-conviction relief. Ariz. R. Crim. P. 32.2(a)(1). Kolmann has not identified any applicable exception to the preclusion rule, and thus the alleged juror misconduct does not constitute a colorable claim for relief.

¶26 Whether or not precluded, the claim of juror misconduct would only entitle Kolmann to a new trial if he could show prejudice, either actual or presumed. *See State v. Miller*, 178 Ariz. 555, 558, 875 P.2d 788, 791 (1994). He cannot do so. L.M. consistently said she was incapable of making a decision, and that fact would have warranted excusing her from the jury irrespective of her tentative inclination to vote not guilty or the other juror's advice to her. *Cf. United States v. Spruill*, 808 F.3d 585, 595 (2d Cir. 2015) (dismissal of juror with bias was proper, even though at time she was the lone holdout in deliberations). L.M.'s affidavit does not show that she was encouraged or coerced by the second juror or anyone else to seek to be excused. Instead, the affidavit states that when L.M. "felt overwhelmed by the task of judging someone's guilt," she "decided to see if she could be replaced" by the alternate, and the second juror "gave her advice." Kolmann's speculation that the second juror wanted to replace L.M. as a holdout juror does not alter the fact that the court properly dismissed her based on her expressed inability to decide anybody's guilt or innocence.

¶27 Finally, Kolmann was entitled to an impartial jury, not a particular jury. *State v. Morris*, 215 Ariz. 324, 334 ¶ 40, 160 P.3d 203, 213 (2007). Kolmann does not contend that the reconstituted jury was biased, and the record reflects that the alternate juror was chosen along with the regular jurors, heard all the evidence, and was instructed on the applicable law. Ultimately, Kolmann was convicted by an impartial, unanimous twelve-person jury. Thus, even if he properly raised his juror misconduct claim, he has not shown he was denied a fair trial and thereby prejudiced.

## III.

¶28 The trial court did not abuse its discretion in summarily dismissing Kolmann's Rule 32 petition for post-conviction relief. We affirm the decisions of the trial court and the court of appeals.