NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

TYLER SCOTT KOLEY, *Appellant.*

No. 1 CA-CR 15-0652
FILED 12-1-2016

Appeal from the Superior Court in Maricopa County
No.  CR2014-002703-001
The Honorable George H. Foster, Jr., Judge

**CONVICTION AFFIRMED; SENTENCE VACATED; AND
REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jeffrey L. Force
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Andrew W. Gould and Judge Patricia A. Orozco joined.

---

**S W A N N**, Judge:

¶1          Tyler Scott Koley appeals his conviction and sentence for aggravated assault.   For the reasons that follow, we affirm Koley's conviction, vacate his sentence, and remand for resentencing.

### FACTS AND PROCEDURAL HISTORY[1]

¶2          In May 2014, eleven-year-old E.G. lived in the same apartment building as Koley.  E.G. considered Koley a friend, and Koley often visited her apartment to play video games.  On May 18, 2014, E.G. was in her apartment when she and her father heard Koley and the victim arguing outside.  Concerned by the heated exchange, E.G.'s father went outside and defused the situation.  Koley then came over to play video games with E.G.'s brothers for thirty to sixty minutes, and left.

¶3          Later in the day, the victim had a large, outdoor family gathering at his residence, which was located across the street from Koley's apartment building.  At some point, Koley came outside to smoke a cigarette and glared in the family's direction.  A verbal altercation ensued between Koley and the victim.

¶4          Once again, E.G. overheard Koley and the victim arguing outside her apartment.  Curious, E.G. went outside and heard the victim say, "If you want we can handle this right now.  If you want, I'll put my baby down."  Koley answered, "Well, put your baby down that's the last time you're seeing it."   The victim, who was holding his infant child, handed the infant to his wife and walked toward Koley saying, "Come at me [racial epithet]."

¶5          As the men stood face to face, Koley stabbed the victim in the abdomen.  The victim immediately covered his abdominal wound with his hands and Koley stabbed him a second time, piercing his hand.  When the

---

[1]     We view the facts in the light most favorable to sustaining the verdict.  *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

victim turned to retreat, Koley stabbed him a third time in the back, and the victim stumbled a few feet and collapsed. While the victim lay bleeding on the ground, Koley ran to his upstairs apartment.

¶6 The victim's sister called 9-1-1. Within a few minutes, Officer W. arrived and found the victim's family members gathered around him, trying to apply pressure to his wounds. Paramedics arrived and transported the victim to the hospital.

¶7 Meanwhile, Koley's girlfriend, Rasheeda, called 9-1-1 to report that Koley had stabbed the victim. While Rasheeda spoke with the dispatcher, Koley told Rasheeda that he stabbed the victim because he believed the victim was going to hurt him. Police officers arrived at Koley's apartment, and the dispatcher provided instructions for Koley's surrender to police. Koley cooperated with the officers, informed them where he put the knife, and was taken into custody.

¶8 The State charged Koley with one count of attempt to commit first-degree murder and one count of aggravated assault and alleged aggravating circumstances.

¶9 The victim was hospitalized for three to four days and had multiple surgeries. At trial, the victim acknowledged having a heated exchange with Koley and walking toward him, but testified that he had no weapon on him.

¶10 Koley testified that he acted in self-defense. On the morning of the incident, Koley overheard the victim tell another neighbor that "we got snitches out here" and saw him spit in Koley's direction. Concerned that he was being labeled a snitch, which could put his life and family in danger, Koley confronted the victim. Koley testified that right before the altercation, when he and the victim again exchanged threatening words, the victim walked toward him with two other men. Koley saw the victim reach toward his waistband, so he pulled out his knife and stabbed the victim. Koley acknowledged that the victim never touched him or displayed a weapon. He admitted that he intentionally stabbed the victim three times but only did so because he believed the victim would hurt him.

¶11 After a seven-day trial, the jury found Koley not guilty of attempted first-degree murder, not guilty of attempted second-degree murder, not guilty of attempted manslaughter, and guilty of aggravated assault. The jury also found two aggravating factors. The trial court found the aggravating factors outweighed the mitigating factors and sentenced Koley to a slightly aggravated sentence of eight and one-half years'

imprisonment. Koley timely appeals. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

**DISCUSSION**

I.    FAILURE TO INSTRUCT RECONSTITUTED JURY TO BEGIN DELIBERATIONS ANEW

¶12    Koley contends the trial court erred by failing to instruct a reconstituted jury to commence its deliberations anew. Because Koley did not raise this objection in the trial court, we review only for fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19-20 (2005).

¶13    Given the possible length of sentence associated with the charged offenses, fourteen jurors were impaneled at trial. After the parties presented their closing arguments and the trial court admonished the jurors with final instructions, the court clerk selected two alternates by lot and the court instructed the alternates that they would not "initially deliberate," but could be called back to deliberate if one of the other jurors was unable to continue. The court further explained that, in such an event, "we have to start deliberations all over again," so the admonition not to discuss or research the case still applied. Both jurors acknowledged and understood these additional instructions.

¶14    The jury deliberated for about thirty minutes then recessed, planning to continue deliberations the following morning at 9:30 a.m. However, the jury did not resume until almost 11 a.m. Alternate Juror 10 joined the deliberations at that time, and Juror 8 was excused. Those proceedings were not recorded. Instead, the transcript for July 23, 2015, begins at 4:11 p.m., when the court reconvened to hear the jury's verdicts.

¶15    Pursuant to Arizona Rules of Criminal Procedure ("Rule") 18.5(h), "[i]n the event a deliberating juror is excused . . ., the court may substitute an alternate juror . . . to join in the deliberations. If an alternate joins the deliberations, the jury *shall* be instructed to begin deliberations anew." (emphasis added). Although failing to instruct a reconstituted jury to commence deliberations anew is clear error, "the omission of such an instruction does not always require reversal of a conviction." *State v. Kolmann*, 239 Ariz. 157, 162, ¶ 19 (2016); *see also Claudio v. Snyder*, 68 F.3d 1573, 1577 (3d Cir. 1995). To evaluate whether a defendant was prejudiced by the error, such that a properly instructed jury "could have reached a different result," a reviewing court should consider: (1) whether other jury instructions ameliorated the error; (2) the length of time the jury deliberated before and after reconstitution; and (3) the strength of the evidence against

the defendant. *State v. Dalton*, 239 Ariz. 74, 78, ¶ 9 (App. 2016), *review granted* (Ariz. Aug. 30, 2016).

**¶16** Because Koley apparently waived a recording of the morning proceedings, the record does not reflect whether the reconstituted jury was provided additional instructions. Unlike in *Dalton*, where the State acknowledged "that the superior court did not instruct the jury to begin its deliberations anew when the alternate joined it," 239 Ariz. at 75, ¶ 1, the State here argues that, in the absence of transcripts, we should presume the trial court properly instructed the jury. The record does not reflect that Koley objected to the trial court proceeding without a reporter on the morning of July 23, 2015, when Juror 8 was excused and the jury reconstituted. Because it "is the duty of counsel" to ensure the record "contains the material to which they take exception," when "matters are not included in the record on appeal, the missing portions of the record will be presumed to support the action of the trial court." *State v. Zuck*, 134 Ariz. 509, 513 (1982). Therefore, in the absence of a record or concession by the State, we presume the trial court complied with Rule 18.5(h).

**¶17** Even assuming *arguendo* that the trial court failed to properly instruct the reconstituted jury, Koley has failed to demonstrate any prejudice. Applying the *Dalton* factors, first, the court's instruction to the alternates, given in the presence of the other jurors, that deliberations must begin anew in the event either alternate was called back to deliberate, at least partially ameliorated any failure to follow Rule 18.5(h). Second, the record reflects that the original jury deliberated for only one-half hour, and the reconstituted jury for over four hours. Though the jury may have recessed during that time, the clear majority of the deliberations took place amongst the reconstituted jurors. Finally, the evidence against Koley on the assault charge was overwhelming. Multiple witnesses testified that the victim was unarmed and never touched Koley before the stabbing.

**¶18** More importantly, the uncontroverted evidence reflects that Koley used a deadly weapon to intentionally cause physical injury to the victim without justification, and no reasonable jury could have found otherwise. Koley testified that he intentionally and repeatedly stabbed the victim, though claiming he feared for his own safety. Consistent with the trial court's instruction to the jury, however, self-defense justifies the use of deadly physical force only while the apparent danger continues, no longer. A.R.S. § 13-404(A); *see also State v. Barker*, 94 Ariz. 383, 389 (1963). Even accepting Koley's testimony that he feared for his safety when the victim approached him motioning toward his waistband, any danger the victim presented before the first stabbing arguably ended before the second

stabbing, when the victim was clutching his abdomen with his hands, and indisputably ended before the third stabbing, when the victim had turned away from Koley, still clutching his abdomen and trying to retreat.

## II.     IMPOSITION OF AGGRAVATED SENTENCE

**¶19**     Koley argues that the trial court erred by imposing an aggravated sentence. Defense counsel timely objected, and we review for harmless error. *Henderson*, 210 Ariz. at 567, ¶ 18 (2005). "Harmless error review places the burden on the state to prove beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence." *Id*. "[W]hether a particular aggravating factor used by the court is an element of the offense and whether the court properly can use such a factor in aggravation are questions of law, which we review de novo." *State v. Tschilar*, 200 Ariz. 427, 435, ¶ 32 (App. 2001).

**¶20**     The State charged Koley with aggravated assault based on his use of a deadly weapon to physically injure the victim. The State also alleged it was a dangerous felony because the offense involved the use of a deadly weapon to inflict "serious physical injury." In addition, the State alleged two aggravating circumstances: (1) the infliction of serious physical injury and (2) the use of a deadly weapon.

**¶21**     In its final instructions to the jury, the trial court informed the jurors that, to prove aggravated assault, the State was required to demonstrate that Koley committed an assault and either: (1) caused the victim serious physical injury, or (2) used a deadly weapon or dangerous instrument. Referencing this instruction during his closing statements, the prosecutor conflated the elements and argued the jury needed to find Koley intentionally inflicted "serious physical injury" on the victim by using "a deadly weapon" in order to convict Koley of aggravated assault.

**¶22**     After submitting the case to the jury, the trial court told the prosecutor it would allow him to "argue [his] aggravators" but that the court would not be bound by the jury's findings. Specifically, the court noted that the aggravated assault charge was aggravated "because of the use of a deadly weapon," and therefore the use of a deadly weapon could not be used as "an aggravator on top of that."

**¶23**     Before closing arguments in the aggravation phase, defense counsel objected to both aggravators alleged by the State, arguing they were elements of the offense of aggravated assault already found by the jury. The trial court overruled the objection, allowing the jury to make its findings, and stated that it would decide the issue at sentencing.

¶24       The jury found the State had proven both aggravators alleged and that the offense was dangerous.  At sentencing, the court noted defense counsel's renewed objection that the use of a dangerous weapon was encompassed within the aggravated assault charge, but found the aggravating factors outweighed the mitigating factors and imposed a slightly aggravated sentence.

¶25       "An element of an offense may be used as an aggravating factor if the legislature has specified that it may be so used." *Tschilar*, 200 Ariz. at 435, ¶ 33.  The State concedes that the use of aggravating factors was not authorized in this case.  We agree.

¶26       Pursuant to A.R.S. § 13-701(D), a court "shall consider the following aggravating circumstances": (1) infliction of serious physical injury, "except if this circumstance is an essential element of the offense of conviction or has been utilized to enhance the range of punishment" under A.R.S. § 13-704 (dangerousness); or (2) use of a deadly weapon, "except if this circumstance is an essential element of the offense of conviction or has been utilized to enhance the range of punishment" under A.R.S. § 13-704 (dangerousness).

¶27       As conceded by the State, the use of a deadly weapon was an essential element of the assault and used to enhance the punishment as an aggravating circumstance and for the dangerousness finding.  Therefore, use of a deadly weapon could not properly be used as an aggravating circumstance.  *See State v. Glassel*, 211 Ariz. 33, 57 n.17, ¶ 101 (2005) (explaining the trial court erred by relying on the defendant's use of a deadly weapon as an aggravating circumstance because the use of a deadly weapon was used to enhance the range of punishment).  Although Koley was only charged with using a deadly weapon to intentionally cause the victim "physical injury," the jury instructions and the prosecutor's closing argument instructed the jury that serious physical injury was an element of the aggravated assault.  Therefore, infliction of serious physical injury was an essential element of the offense and could not be used as an aggravating factor.  Since we cannot say the trial court would reach the same result absent the error, we remand for resentencing.  *See State v. Pena*, 209 Ariz. 503, 507, 509, ¶¶ 11, 23-24 (2005).

## CONCLUSION

¶28     For the foregoing reasons, Koley's conviction is affirmed; his sentence is vacated; and the matter is remanded to the trial court for resentencing.



AMY M. WOOD • Clerk of the Court
FILED:   AA