389 P.3d 1266

**The STATE of Arizona, Respondent,**

v.

**Jose Eligio LEYVA, Petitioner.**

**No. 2 CA–CR 2016–0386–PR**

Court of Appeals of Arizona,
Division 2.

Filed February 22, 2017

George E. Silva, Santa Cruz County Attorney, By Kimberly J. Hunley, Deputy County Attorney, Nogales, Counsel for Respondent

Barton & Storts, P.C., Tucson, By Brick P. Storts, III, Counsel for Petitioner

Presiding Judge Staring authored the opinion of the Court, in which Judge Espinosa and Judge Miller concurred.

**OPINION**

STARING, Presiding Judge:

¶ 1 Jose Leyva seeks review of the trial court's summary dismissal of his petition for post-conviction relief, filed pursuant to Rule 32, Ariz. R. Crim. P. For the reasons that follow, we grant review but deny relief.

¶ 2 Pursuant to a plea agreement, Leyva was convicted of one count each of kidnapping, aggravated assault, and child abuse, all domestic violence offenses.[1] The trial court accepted his guilty plea on January 14, 2016, a week before his jury trial was scheduled to commence. Although that date's hearing had been scheduled to address motions in limine, jury instructions, and voir dire, Leyva's attorney asked the court to grant Leyva an opportunity to discuss the state's plea offer with his mother and sister, who were present in court. The court granted the request and later was informed Leyva had signed a plea agreement.[2] After conducting a plea colloquy, *see* Ariz. R. Crim. P. 17.2, the court found Leyva's guilty plea had been "made knowingly, intelligently and voluntarily" and scheduled sentencing for February 16.

¶ 3 On February 11, Leyva filed a motion to withdraw from his plea agreement, asserting he had been "coerced into accepting the plea because of pressure put on him" by his attorney, his mother, and his sister. Leyva argued he had "regretted this decision upon leaving the courtroom, and wished to file an immediate motion requesting withdrawal." His attorney had "encouraged him to wait a little while to see if he would feel differently before formally requesting to withdraw," but, after waiting, he "still believe[d] that acceptance of the plea offer was not the right thing to do." The court scheduled a hearing for February 29 and tentatively continued sentencing until that date, dependent on its ruling on the motion. On February 29, the court denied Leyva's motion and rescheduled sentencing for March 7. Leyva admitted having one historical prior felony conviction, and the trial court sentenced him to enhanced, maximum, concurrent terms of imprisonment, the longest of which is 18.5 years.

---

1. Leyva was originally charged with two counts of aggravated assault, two counts of kidnapping, one count of sexual assault, and one count of child abuse, and the state had alleged he had two or more historical prior felony convictions. *See* A.R.S. § 13–703(C) and (J) (enhanced sentencing range for "category three repetitive offender").

2. The record does not indicate the length of this meeting, but Leyva's trial attorney later described it as "a couple of hours of emotional discussions."

¶ 4 Leyva filed a timely notice of post-conviction relief and, in the petition that followed, alleged he had been "denied a basic constitutional right when the trial court denied his motion to withdraw from the plea, and his counsel was ineffective because she failed to file a motion to withdraw from the plea immediately upon learning that [he] felt coerced" into entering the plea. Leyva asserted he "would have had a much better chance of having the motion granted" had it been filed sooner. Finally, Leyva maintained his attorney performed deficiently at sentencing by failing to present mitigating evidence or to object to the presentence report.

¶ 5 The trial court dismissed the petition without a hearing, finding "no purpose would be served by further proceedings." *See* Ariz. R. Crim. P. 32.6(c) (court "shall order the petition dismissed" if no non-precluded claim "presents a material issue of fact or law which would entitle the defendant to relief" and "no purpose would be served by any further proceedings"). This petition for review followed.

### Discussion

¶ 6 We review a trial court's denial of post-conviction relief for an abuse of discretion, and we will affirm that ruling if it is legally correct for any reason. *State v. Roseberry*, 237 Ariz. 507, ¶ 7, 353 P.3d 847, 848 (2015). On review, Leyva asserts "the trial court err[ed]" in finding he failed to state a colorable claim, and he asks that we remand the case for an evidentiary hearing. He argues "there was no determination of voluntariness" with respect to his guilty plea.[3] He also contends the trial court "did not consider" his assertions that his guilty plea was "coerced" by family members and counsel and therefore was not voluntary.[4] The court correctly concluded that no material issue of

fact or law would entitle Leyva to relief and correctly dismissed his petition.

### Limitations of Post–Conviction Relief under Rule 32

¶ 7 Leyva's claims for post-conviction relief are cognizable only to the extent they fall within a specific ground enumerated in Rule 32.1. As our supreme court has explained, "[a]fter the legislature abolished direct appeals for pleading defendants" in 1992, "Rule 32.1 was amended to provide for an 'of-right' [post-conviction relief] proceeding" for such defendants, to be heard "in the court that rendered the challenged conviction or sentence." *State v. Shrum*, 220 Ariz. 115, ¶ 10, 203 P.3d 1175, 1178 (2009); *see also* 1992 Ariz. Sess. Laws, ch. 184, § 1 (amending A.R.S. § 13–4033).

¶ 8 Rule 32 is "analogous to a direct appeal." *Montgomery v. Sheldon*, 181 Ariz. 256, 260 n.5, 889 P.2d 614, 618 n.5 (1995), *superseded by statute on other grounds as recognized by State v. Smith*, 184 Ariz. 456, 459, 910 P.2d 1, 4 (1996). But it provides " 'a distinct form of appellate review,' " and "[e]ven when a Rule 32 petition provides the first opportunity for review, as occurs when a defendant pleads guilty, . . . the Rule 32 process does not equate to a direct appeal." *State v. Glassel*, 233 Ariz. 353, ¶¶ 9–10, 312 P.3d 1119, 1120–21 (2013), *quoting Montgomery*, 181 Ariz. at 259 n.2, 889 P.2d at 617 n.2. Specifically, post-conviction relief under Rule 32 "is more limited" than that available by direct appeal. *Wilson v. Ellis*, 176 Ariz. 121, 125, 859 P.2d 744, 748 (1993) (Martone, J., dissenting). Unlike a direct appeal, in which the type and number of issues an appellant can raise "are not limited by a per se rule," the issues that may be raised in a Rule 32 petition are limited by Rule 32.1, and a petitioner must "assert grounds that bring him

---

3. Leyva appears to be referring only to the trial court's order denying Rule 32 relief. In accepting the plea on January 14, 2016, however, the court expressly found, "[T]he plea is made knowingly, intelligently and voluntarily, [and] there is a factual basis for the plea."

4. Leyva does not dispute the trial court's ruling that he failed to state a colorable claim of ineffective assistance based on counsel's alleged failure to object to statements in the presentence investigation report. Accordingly, we do not address this issue. *See* Ariz. R. Crim. P. 32.9(c)(1) (issues not raised on review deemed waived).

within the provisions of the Rule in order to obtain relief." *State v. Carriger*, 143 Ariz. 142, 145–46, 692 P.2d 991, 994–95 (1984).

¶ 9 Although Leyva framed one of his claims below as a challenge to the trial court's denial of his motion to withdraw his plea, Rule 32.1 does not provide for review of such a ruling. *See* Ariz. R. Crim. P. 32.1; *see also Washington v. Superior Court*, 180 Ariz. 91, 93, 881 P.2d 1196, 1198 (App. 1994) (accepting special action review of denial of Rule 17.5 motion to withdraw no contest plea, noting appeal unavailable). However, his claim that his plea was involuntary, and therefore "was in violation of the Constitution of the United States or of the State of Arizona" under Rule 32.1(a), is a cognizable claim for post-conviction relief.[5]

## Voluntary Nature of Leyva's Guilty Plea

¶ 10 In its Rule 32 order, the trial court explained that, when it afforded Leyva an opportunity to discuss the state's plea offer with his family and attorney, "[t]hese discussions did not include the deputy county attorney or the court," and "the parties were not hurried or pressured to reach a resolution." After it was informed that Leyva wished to accept the plea agreement, the court conducted a plea colloquy and accepted Leyva's guilty plea.[6]

¶ 11 Referring to those proceedings in its Rule 32 order, the court noted that "[t]here

was nothing on the record, in his demeanor or stated by Leyva that he did not want the plea agreement," and that, despite "a number of opportunities to say something about the plea agreement and his reluctance to enter into the agreement," Leyva "stayed silent." Through its review of those proceedings, the court reaffirmed its finding of voluntariness. We reject Leyva's contrary assertion.

¶ 12 We are similarly unpersuaded by Leyva's claim that the change-of-plea colloquy was "only one possible item" to be considered by the trial court in assessing his claim that his plea was involuntary.[7] "This colloquy between a judge and a defendant before accepting a guilty plea is not pro forma and without legal significance." *Fields v. Gibson*, 277 F.3d 1203, 1213–14 (10th Cir. 2002). At the change-of-plea hearing, Leyva told the trial court he understood the agreement, had no questions, had been made no other promises, and was willing to give up his rights in order to enter a guilty plea. Such "[s]olemn declarations in open court carry a strong presumption of verity," and "constitute a formidable barrier" in a subsequent challenge to the validity of the plea. *Blackledge v. Allison*, 431 U.S. 63, 73–74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

¶ 13 Nonetheless, the Supreme Court has likened a guilty plea to a contract that may be set aside "on the grounds of

---

**5.** When applying the Arizona law in effect before the 1992 amendment to § 13–4033, this court reviewed, on direct appeal, a challenge to the denial of a Rule 17.5 motion for an abuse of discretion. *See, e.g., State v. Richardson*, 175 Ariz. 336, 339, 857 P.2d 388, 391 (App. 1993). On at least two other occasions, we have considered Rule 32.9 petitions for review in which defendants raised the same claim of constitutional infirmity in their motions to withdraw their guilty pleas and their petitions for post-conviction relief. *See State v. Chairez*, 235 Ariz. 99, ¶¶ 12–14, 327 P.3d 886, 889 (App. 2013) (court had not "abused its discretion in denying his motion to withdraw the guilty pleas before sentencing and in denying his request for post-conviction relief on that ground"; summary dismissal proper); *State v. Cramer*, 192 Ariz. 150, ¶¶ 8, 18, 962 P.2d 224, 226, 228 (App. 1998) (citing *Richardson*, concluding court "did not abuse its discretion by refusing to allow defendant to withdraw from his plea and by denying post-convic-

tion relief"). But we do not mean to suggest the denial of a Rule 17.5 motion is subject to independent review pursuant to Rule 32. Claims cognizable under Rule 32 are strictly limited to those found in Rule 32.1. *Carriger*, 143 Ariz. at 145–46, 692 P.2d at 994–95.

**6.** Leyva has not argued the court's colloquy was inadequate under Rule 17.3, Ariz. R. Crim. P.

**7.** In support of this proposition, Leyva cites *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008), in which the court considered, on direct appeal, whether the defendant had established "a fair and just reason for requesting the withdrawal," Fed. R. Crim. P. 11(d)(2)(B). As previously addressed, the only consideration before this court is whether Leyva has stated a colorable claim that his conviction was unconstitutional. *See* Ariz. R. Crim. P. 32.1(a).

fraud, mistake, [or] duress." *Id.* at 75, n.6, 97 S.Ct. 1621. Thus, the presumption a defendant responded truthfully when questioned by the court may be rebutted by showing those representations "were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis" for his conviction. *Id.* at 75–78, 97 S.Ct. 1621 (summary dismissal unwarranted when record limited to "standard printed form" and claim supported by "specific factual allegations" about "when, where, and by whom the promise had been made," identity of "witness to its communication," and attorney's advice to conceal promise from court); *see also State v. Hershberger*, 180 Ariz. 495, 497–98, 885 P.2d 183, 185–86 (App. 1994) (evidentiary hearing required on claim plea induced by attorney's misrepresentation of sex offender registration provisions). But a challenge to plea proceedings is subject to summary dismissal when based on "conclusory allegations unsupported by specifics" or on "contentions that in the face of the record are wholly incredible." *Allison*, 431 U.S. at 74, 97 S.Ct. 1621.

¶ 14 "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), *quoting North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Thus, a plea will not stand if it was "induced by promises or threats which deprive it of the character of a voluntary act." *Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). But Leyva does not allege he was induced to plead guilty by promises or threats. Instead, he maintains his guilty plea was involuntary "because of the pressure brought to bear" by his mother and his sister when he was feeling "especially vulnerable," due to his inability to see them while incarcerated.

¶ 15 Leyva has not identified any cases in which a court has found undue coercion sufficient to invalidate a plea based on a defendant's allegations that his family members urged him to plead guilty. And based on this court's own review, authorities appear to agree that such "[a]dvice[,] even strong urging" to enter a guilty plea, undertaken "by those who have an accused's welfare at heart ... does not constitute undue coercion" that renders a plea involuntary. *Lunz v. Henderson*, 533 F.2d 1322, 1327 (2d Cir. 1976); *see also Fields*, 277 F.3d at 1214–15 (plea not rendered involuntary because defendant's family and attorney "implore[d] him to plead guilty"); *Williams v. Chrans*, 945 F.2d 926, 933 (7th Cir. 1991) (attorneys' use of "verbal persuasion to convince their client to plead guilty" did not invalidate plea; defendants commonly pressured by " 'co-defendants, friends, and relatives,' " and such influences are " 'inevitable and unavoidable' "), *quoting LoConte v. Dugger*, 847 F.2d 745, 753 (11th Cir. 1988); *United States v. Pellerito*, 878 F.2d 1535, 1541 (1st Cir. 1989) (family pressure may be "probative of an accused's *motivation* for pleading guilty" without constituting "coercion, duress, or involuntariness"); *Iaea v. Sunn*, 800 F.2d 861, 867 (9th Cir. 1986) (strong urging by third parties to plead guilty, based on strength of state's case, not undue coercion).

¶ 16 In sum, Leyva does not describe any conduct by his attorney or family that would constitute improper coercion sufficient to invalidate his plea. As one court has explained, "[i]t is ... commonplace that a defendant will feel 'coerced' in the lay sense of the word by an attorney's recommendation to plead guilty," but "defense counsel's ... honest but negative assessment of [petitioner's] chances at trial" does not "constitute improper behavior or coercion that would suffice to invalidate a plea." *United States v. Juncal*, 245 F.3d 166, 172, 174 (2d Cir. 2001); *see also Iaea*, 800 F.2d at 866 ("When a guilty plea is challenged as being the product of coercion, our concern is not solely with the subjective state of mind of the defendant, but also with the constitutional acceptability of the external forces inducing the guilty plea.").

¶ 17 Nor is Leyva's claim advanced by his assertion that he was "especially vulnerable"

because he had been unable to visit with family members while incarcerated.[8] " 'Distress' and 'nervousness' are the characteristics of most persons facing immediate trial under a criminal prosecution," and "[t]o accept such a normal emotional reaction as a ground to vitiate a plea … would make a shambles of the guilty plea procedure." *Fluitt v. Superintendent, Green Haven Corr. Facility*, 480 F.Supp. 81, 86 (S.D.N.Y. 1979); *see also Pellerito*, 878 F.2d at 1535, 1541 (rejecting claim that plea coerced by "stressful situation" and "agitated emotional state" brought on by urgings of hospitalized mother; noting "many" defendants "sensitive to external considerations"); *Meachem v. Keane*, 899 F.Supp. 1130, 1141 (S.D.N.Y. 1995) (defendant's "[e]motional turmoil from being accused of a crime does not give rise to a finding of coercion"). The trial court did not abuse its discretion in summarily dismissing Leyva's claim that his plea was rendered involuntary by undue coercion. *See Wojtowicz v. United States*, 550 F.2d 786, 792–93 (2d Cir. 1977) (no evidentiary hearing required when allegations, assumed to be true, would not support claim of undue coercion by family members).[9]

**Ineffective Assistance**

¶ 18 "By entering a guilty plea, a defendant waives all non-jurisdictional defects and defenses, including claims of ineffective assistance of counsel, except those that relate to the validity of a plea." *State v. Banda*, 232 Ariz. 582, ¶ 12, 307 P.3d 1009, 1012 (App. 2013). "To state a colorable claim, a petitioner must show 'both that counsel's performance fell below objectively reasonable standards and that this deficiency prejudiced

[him].' " *State v. Kolmann*, 239 Ariz. 157, ¶ 9, 367 P.3d 61, 64 (2016), *quoting State v. Bennett*, 213 Ariz. 562, ¶ 21, 146 P.3d 63, 68 (2006).

¶ 19 Although Leyva does not directly challenge the trial court's finding that "[c]ounsel was not ineffective during the plea stage," he continues to refer to his attorney's coercion and delay in filing a motion to withdraw the plea. To the extent this aspect of Leyva's ineffective assistance claim might be considered preserved for review, the court did not abuse its discretion in summarily dismissing it.

¶ 20 In the motion to withdraw filed before sentencing, trial counsel acknowledged she had urged Leyva to accept the plea agreement and later encouraged him "to wait a little while to see if he would feel differently before formally requesting to withdraw" from it. Leyva has provided no basis to conclude his attorney's conduct was anything but professional in nature—informed by what she believed to be in his best interest—or to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Fields*, 277 F.3d at 1214, 1216 (counsel did not perform deficiently by "convinc[ing] defendant's] family to implore him to plead guilty"); *State v. Ellison*, 111 Ariz. 167, 168, 526 P.2d 706, 707 (1974) (noting defense attorney "may be performing his best service for his client in advising him to plead guilty as a means of bargaining for the most lenient treatment possible").

¶ 21 Leyva provided no affidavits or other evidence in the trial court suggesting his

8. Leyva asserts he "was especially vulnerable" when he met with his mother and sister on January 14 "because he had not been able to visit with family members while he was detained at the Santa Cruz County jail." According to the state, those visitation restrictions were the result of pending charges of witness tampering against Leyva and his mother, in which the state alleged Leyva had attempted to manipulate the victim's testimony and had involved his mother in those attempts.

9. In an affidavit submitted with Leyva's petition, he averred he "[does not] believe that [he] was thinking straight" when he agreed to plead guilty and, in his petition below, he cited his trial attorney's argument, in the motion to withdraw, that his "will was overcome." But in the absence of any other support, such as an affidavit from an expert, we have no difficulty finding these self-serving assertions insufficient to rebut the presumption of verity occasioned by his plea colloquy or to state a colorable claim that his plea was involuntary.

**528**

attorney's conduct fell below prevailing professional norms. *See* Ariz. R. Crim. P. 32.5 ("Affidavits, records, or other evidence currently available to the defendant supporting the allegations of the petition shall be attached to it."). Nor has he cited any authority showing similar conduct has been found to constitute ineffectiveness. His bald assertions are insufficient to demonstrate a colorable claim of professional deficiency under the *Strickland* test. *See State v. Donald*, 198 Ariz. 406, ¶ 21, 10 P.3d 1193, 1201 (App. 2000) (to warrant evidentiary hearing, Rule 32 claim "must consist of more than conclusory assertions").

¶ 22 Similarly, his speculation that he would "have had a much better chance" of prevailing on his motion to withdraw, had counsel filed it sooner, is insufficient to state a colorable claim of prejudice. *See State v. Rosario*, 195 Ariz. 264, ¶ 23, 987 P.2d 226, 230 (App. 1999) (to state colorable claim of ineffective assistance, petitioner must present more than "mere speculation" of prejudice). Moreover, we have already determined the court did not abuse its discretion in finding no material issue of fact or law with respect to the voluntary nature of Leyva's plea. Because Leyva's Rule 17.5 motion asserted the same argument—that his plea was involuntary due to family pressure—we see no "reasonable probability" of a different result, but for the delay in filing. *See Bennett*, 213 Ariz. 562, ¶ 25, 146 P.3d at 69 (colorable claim of prejudice requires showing of "reasonable probability that, but for counsel's unprofessional errors, the result of the pro-

ceeding would have been different"), *quoting Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

¶ 23 Finally, Leyva suggests the trial court employed the wrong legal standard for summary dismissal by stating he had "failed to meet his burden" of establishing his claims by a preponderance of the evidence, the standard applicable to claims resolved after an evidentiary hearing. *See* Ariz. R. Crim. P. 32.8(c). But this apparent misstatement by the court is of no moment under these circumstances; Leyva's petition was subject to summary dismissal under Rule 32.6(c), as correctly found by the court.[10] *Roseberry*, 237 Ariz. 507, ¶ 7, 353 P.3d at 848 (appellate court will affirm court's order denying post-conviction relief if legally correct for any reason).

### Disposition

¶ 24 Leyva has failed to establish the trial court abused its discretion in summarily dismissing his petition for post-conviction relief. Accordingly, while we grant review, we deny relief.

---

10.  Similarly, we need not address Leyva's challenge to the court's suggestion in its order that Leyva had "buyer's remorse" "*after* sentencing." The court's statement may have referred only to this Rule 32 proceeding; as Leyva acknowledges, the court also "recognized that the motion to withdraw from the plea was [filed] prior to sentencing."