NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

CHARLES WALLACE SHELBY, *Petitioner*.

No. 1 CA-CR 24-0430 PRPC

FILED 03-25-2025

Petition for Review from the Superior Court in Maricopa County
No.  CR2021-030118-001, CR2022-001216-007, CR2022-001560-001
The Honorable Jo Lynn Gentry, Judge (Retired)

**REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Johnny Jacquez
*Counsel for Respondent*

Vingelli & Company, Law Offices, PLLC, Scottsdale
By John N. Vingelli
*Counsel for Petitioner*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge D. Steven Williams joined.

---

**P E R K I N S,** Judge:

¶1        Charles Wallace Shelby seeks review of the superior court's order denying his petition for post-conviction relief. We grant review but deny relief.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Police arrested Shelby in August 2021 for possessing a stolen motorcycle and identity theft. Multiple grand juries indicted Shelby on several charges in February and May 2022—some of which stemmed from events unrelated to his initial arrest.

¶3        Counsel represented Shelby throughout plea negotiations. The State offered to dismiss most of the charges if Shelby pled guilty to a few of the charges. Relevant to this petition, the State offered him concurrent six-year sentences for two counts of aggravated taking the identity of another, one count of assisting a criminal syndicate, and one count of attempted theft of a means of transportation. Shelby also pled guilty to one count of possession or use of dangerous drugs with a prior historical felony and received a concurrent 4.5-year sentence. Shelby asked the prosecutor how much time he would actually spend in prison if he accepted the combined plea deals. The prosecutor responded "if I were to offer a stiff six, I think you're realistically looking at pretty close to three and a half years, give or take a few months."

¶4        That estimate assumed Shelby's presentence incarceration began in August 2021 and that Shelby would be released to community supervision after serving 85 percent of his sentences. Shelby's attorney agreed with these rough calculations. Shelby ultimately agreed to the combined plea offers. But none of the written plea agreements said anything about presentence incarceration credit. The court found Shelby knowingly, intelligently, and voluntarily entered into each of the plea agreements when he signed them.

¶5            During a March 2023 sentencing hearing, Shelby expressed confusion about his presentence incarceration credit. The court and the parties discussed how police initially arrested Shelby on the aggravated taking the identity of another charges and thus he was entitled to 614 days of presentence incarceration credit on those charges. But the grand jury indicted him on the assisting a criminal syndicate and the attempted theft of a means of transportation charges after he was in custody — and he was only entitled to 431 and 343 days of presentence incarceration credit for those charges respectively. Shelby "didn't fully appreciate" that the 614 days of credit did not apply to all of his sentences. The court again explained how the presentence incarceration credit worked and asked Shelby if he was still confused. Shelby responded "no."

¶6            The court offered Shelby an opportunity to withdraw from the plea agreements, but he did not. The court sentenced him accordingly. Shelby then petitioned for post-conviction relief, arguing the plea agreements (1) violated the United States and Arizona constitutions and (2) did not reflect the actual agreement reached during the settlement conference. The court denied Shelby's petition, finding that the State never promised Shelby an exact amount of presentence incarceration credit and the agreements' terms were unambiguous. Shelby timely appealed the court's denial.

**DISCUSSION**

¶7            Shelby reargues that his sentences were unconstitutional and the plea agreements do not reflect the actual agreement reached at the settlement conference.

¶8            We review the superior court's ruling on a petition for post-conviction relief for an abuse of discretion. *State v. Pandeli*, 242 Ariz. 175, 180, ¶ 4 (2017).

¶9            When a defendant tells a superior court he understands the plea agreement, has no questions, was made no other promises, and is willing to give up his rights in order to enter a guilty plea, such declarations have legal force. *State v. Leyva*, 241 Ariz. 521, 525, ¶ 12 (App. 2017) ("Such solemn declarations in open court . . . constitute a formidable barrier in a subsequent challenge to the validity of a plea.") (cleaned up). "A defendant's mistaken subjective impressions gained from discussions with his lawyer, absent substantial objective evidence showing such impressions to be reasonably justified, do not constitute sufficient grounds upon which to set aside his guilty plea." *State v. Pritchett*, 27 Ariz. App. 701, 703 (1976).

¶10 Shelby argues the State orally offered him an effective 3.5-year sentence. Not so. First, the prosecutor's language did not communicate a set amount of time Shelby would actually be imprisoned given the uncertainty of his presentence incarceration credit and whether the Department of Corrections would release him on community supervision after serving 85 percent of his sentences. The use of "if," "realistically," "pretty close," and "give or take a few months" indicated that the 3.5-year sentence was conjecture—not a promise.

¶11 Second, Shelby signed plea agreements that were silent as to presentence incarceration credit. The clear terms of each plea agreement, however, removed any ambiguity about the sentences. Even if Shelby had a "mistaken subjective impression[]" from his attorney's affirmation of the 3.5-year effective sentence, he understood the plea agreements before he entered them. The court explained to Shelby the consequences of his guilty pleas and gave him a chance to withdraw, curing any potential error. He still pled guilty. After the court's clarification, Shelby's guilty pleas removed any doubt about the parties' mutual understanding or Shelby's voluntariness. *See Leyva*, 241 Ariz. at 525, ¶ 12.

## CONCLUSION

¶12 We grant review but deny relief.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR

4